**Robert Thomas SMITH, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 20727.**

United States Court of Appeals
Fifth Circuit.

Feb. 26, 1965.

Rehearings Denied April 2, 1965.

Tully R. Florey, III, Mount Pleasant, Tex., J. M. Donald, Jacksboro, Tex., for appellant.

Charles D. Cabaniss, Asst. U. S. Atty., William L. Hughes, Jr., Asst. U. S. Atty., Fort Worth, Tex., Barefoot Sanders, U. S. Atty., B. H. Timmins, Jr., Asst. U. S. Atty., Wadsworth, for appellee.

Before BROWN and WISDOM, Circuit Judges, and ESTES, District Judge.

WISDOM, Circuit Judge:

Robert T. Smith and two other defendants, Welch and Henderson, in a multi-count indictment, were charged with *stealing* social security checks from the United States mail, *possessing* material stolen from the United States mail knowing it to have been stolen, *forging* the payees' endorsements, and *passing* the forged instruments with intent to defraud the United States. The payees lived at the Gilmore Hotel in Fort Worth, Texas. They failed to receive their social security checks for the month of October 1962. The chief evidence linking Smith to the crime was the testimony of his co-defendants, Welch and Henderson, who pleaded guilty and testified for the prosecution. Smith pleaded not guilty. Welch testified that he stole the checks from the Gilmore Hotel mailbox, showed them to Smith, told him that they were stolen, and that Smith forged some or all of the endorsements on the checks. Welch and Henderson then "uttered" the checks and shared the proceeds with Smith. Smith was convicted of possessing stolen mail, in violation of 18 U.S.C. § 1708, and convicted of forging endorsements on social security checks with intent to obtain money from the United States, in violation of 18 U.S.C. § 495. We affirm.

## I.

Smith was represented on this appeal by an able court-appointed attorney, Mr. Tully R. Florey, who has briefed and argued the case as thoroughly and as strongly as could be wished for by any appellant. In addition, Mr. J. M. Donald, a "friend of the family", a local attorney who was not in the United States at the time of Smith's arrest or trial has, as "a friend of the court", filed a brief and several affidavits in Smith's behalf. The Court permitted Mr. Donald to file his brief and affidavits and to make oral argument.

The Court considers it unnecessary to discuss in this opinion all of the questions the appellant's appointed counsel and the *amicus* have raised. We have, however, carefully considered all of the questions counsel have properly raised.

■ The Court must decline to consider the merits of issues based on new evidence furnished for the first time on appeal in the form of affidavits presented by the *amicus*. For example, relying on Escobedo v. State of Illinois, 1964, 378 U. S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, the *amicus* contends that police officers interrogating Smith refused to let him see a lawyer until he confessed. Sitting as a reviewing court, the Court of Appeals cannot go behind the record. Roberts v. United States, 5 Cir. 1963, 325 F.2d 290; United States v. Chesapeake & Ohio Ry. Co., 4 Cir. 1960, 281 F.2d 698; cf. Chicago & Eastern Illinois R. Co. v. Southern Ry. Co., 7 Cir. 1958, 261 F.2d 394, 402; Drake v. General Finance Corporation of Louisiana, Inc., 5 Cir. 1941, 119 F.2d 588. Nor can the Court consider the new factual material included in the brief of the *amicus*. Chesapeake & Ohio Ry. Co. v. Greenup County, Kentucky, 6 Cir. 1949, 175 F.2d 169. However, our decision not to consider the questions raised by the affidavits is without prejudice to the appellant's right to raise these questions in collateral proceedings. Cf. Townsend v. Sain, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770.

■ The *amicus* points out that the trial judge admitted certain hearsay evidence. We assume, without deciding, that some of the testimony of the postal inspector, the secret service agent, and the manager of the hotel was hearsay. The defendant's trial attorney did not object to the admission of this evidence. Smith does not complain that the failure to object was attributable to the attorney's inexperience or incompetence. See

Waltz, "Inadequacy of Trial Defense Representation as a Ground for Post-Conviction Relief in Criminal Cases," 59 N.W.U.L.Rev. 289, 319ff (1964). If there is no timely objection to hearsay, the jury may consider it for whatever probative value it may have. Newsom v. United States, 5 Cir. 1964, 335 F.2d 237. The courts, however, may still reverse a conviction based on hearsay evidence if there has been a plain error affecting substantial rights of the accused. Federal Rules of Criminal Procedure, Rule 52(b); Glenn v. United States, 6 Cir. 1959, 271 F.2d 880. Here there was no plain error affecting the substantial rights of the appellant. Even if we exclude all possible hearsay, we are left with the testimony of Welch, corroborated by Henderson's testimony and the testimony of the payees of the checks; this was sufficient evidence to justify the verdict.

## II.

We deal in this case with substantive federal crimes of great antiquity.[1] Originally the prevention of these crimes served the needs of a postal system, the most serious problems of which were the depredations of highwaymen. The anonymity of the modern postal system creates new problems of proof. Congress has helped in some respects with wise amendments of the statutes;[2] judicial appraisal of the realities of delivering and receiving mail in a modern urban environment must do the rest.

A. Appellant argues ingeniously, and somewhat metaphysically, that his conviction for possessing stolen mail cannot stand, because the mail was not in the custody of the United States when it was taken. He points out that the mail was often left in the hallway of the Gilmore Hotel or in the custody of an employee rather than in the mailbox. The metal box was not locked, and any passerby had access to it since it was at street level, just inside the front door of the hotel. See generally Taylor, Postal Frauds and Crimes, Ch. 3 §§ 4 & 5 at 17–19 for the older law.

There was ample evidence that the mail was in the hotel mailbox when Welch took it. Welch so testified. The question is whether the hotel mailbox was a "letter box * * * or other authorized depository for mail matter."[3] The Postmaster General has power to promulgate regulations defining a "letter box * * * or other authorized depository for mail matter." 5 U.S.C. § 22; 39 U.S.C. §§ 501, 6001–6003; Rosen v. United States, 1917, 245 U.S. 467, 38 S. Ct. 148, 62 L.Ed. 406. The regulation states that "every letter box * * * used for the receipt or delivery of mail" is an authorized depository within the meaning of the mail theft statutes.[4] The regulation plainly includes private, un-

---

1. To our Founding Fathers a postal theft was no trifling matter. See the draconian Act of February 20, 1792, § 17, 1 Stat. 237: "[I]f any person or persons shall rob any carrier of the mail of the United States, of such mail, or if any person shall rob the mail, in which letters are sent to be conveyed by post, of any letter or packet, or shall steal such mail, or shall steal and take from or out of the same, or from or out of any post-office, any letter or packet, such offender or offenders shall, on conviction thereof, *suffer death*." (Emphasis supplied.) By 1872 the softening influences of civilization had mitigated the penalties. See Revised Statutes of 1873, §§ 5469 & 5470.

2. See e. g., the legislative history discussed in United States v. Hines, 2 Cir. 1958,

256 F.2d 561, and Rosen v. United States, 1917, 245 U.S. 467, 38 S.Ct. 148, 62 L. Ed. 406. There have been countless changes in the statutes.

3. 18 U.S.C. § 1708 includes: "Whoever steals * * * from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter."

4. 39 Code of Federal Regulations § 43.7 provides that: "(a) *Designation as authorized depository*. Every letter box or other receptacle intended or used for the receipt or delivery of mail on any city delivery route, rural delivery route star route or other mail route is designated an authorized depository for mail within the meaning of sections 1702, 1705 and 1708 of Title 18, United States Code."

locked mailboxes, in homes and business establishments, used for delivery but not primarily for collection of mail. Rosen v. United States.[5] The regulation is a valid exercise of the authority of the Postmaster General. Rosen v. United States.

There is nothing to distinguish the Gilmore Hotel mailbox from the mailbox in millions of private homes and places of business throughout the nation. All of the cases on which the appellant relies involve an obvious factual distinction.[6] The only distinguishing feature of this case is that the mail of many addressees was delivered to the same box. If anything, this fact seems to cut against the appellant; it shows that the mail in the box was still in the custody of the United States, since it had not yet been delivered to any one addressee.

■ B. The appellant contends that the evidence is insufficient to show that he knew that the checks were stolen from the United States mail. The Government, however, must prove only that the possessor knew it was stolen. Congress has amended the statute to remove the impossible burden of proving knowledge that the matter was stolen from the United States mail. United States v. Hines, 2 Cir. 1958, 256 F.2d 561. Welch testi-

fied that he told the appellant the checks were stolen; Henderson testified that he first learned from Smith's wife that the checks were stolen. Their testimony was not inherently incredible; it was sufficient to show the knowledge requisite to support the jury's verdict.

■ C. Smith contends that there was insufficient evidence to show that he forged the endorsements with intent to defraud the United States. Here again the testimony of Welch and Henderson provides enough evidence of appellant's intent; both testified that they shared the proceeds of the checks with Smith. There was ample circumstantial and testimonial evidence to prove intent to defraud.

■ D. The *amicus* argues that there is no evidence that the letters containing the Social Security checks were ever mailed; no one directly testified that he had mailed the letters. The older cases support the *amicus*. See Beck v. United States, 8 Cir. 1929, 33 F.2d 107; Taylor, Postal Frauds and Crimes, Ch. 21 § 8 at 216–217. Here again, however, the law has moved in the direction of more liberal rules of proof and inference. This Court holds that the "use of the mails may be established, like most other facts, by circumstantial evidence", even

---

5. "The suggestion that when the mail was deposited in a privately owned box it passed out of the custody of the government and beyond the protection of the law does not deserve extended notice. The letters which were stolen did not reach the manual possession of the persons to whom they were addressed, but were taken from an authorized depository over which the act of Congress, by its express terms, extended its protection until its function had been served." Rosen v. United States.

6. The letter box in Huebner v. United States, 6 Cir. 1928, 28 F.2d 929 was not at the entrance of the building but was on the second floor and far within the building, and the building was under the control of a single addressee. Also Huebner was decided under an earlier collateral relative of the present 18 U.S.C. § 1708. There were no regulations like those now in effect. Rosen

on the other hand was decided under what was in effect the modern statutory language and regulations. See Huebner v. United States; United States v. Sehon Chinn, S.D.W.Va.1948, 85 F.Supp. 558, 560. In United States v. Askey, S.D. Tex.1952, 108 F.Supp. 408 the mail was left on the floor and not in a box at all. In United States v. Lophansky, E.D.Pa.1916, 232 F. 297, the mail was not left within a box of any kind. In United States v. Chapman, E.D.N.Y. 1959, 179 F.Supp. 447, the mail was not in a mailbox, it was in a mail bag which had been delivered to an employee of the building in which the addressee was located. The district court held that the mailbag which had been delivered by the Post Office was not a "letter box * * * or other authorized depository" in the sense of 18 U.S.C. § 1708. We need not decide whether the Chapman case was correct on the facts there presented.

if the jury might draw other reasonable inferences from the circumstantial evidence. Stevens v. United States, 5 Cir. 1962, 306 F.2d 834, 836. We follow Stevens.

▮ Sufficient circumstantial evidence supports the inference that the letters were mailed. The payees testified that previously they had always received their checks by mail, and Welch testified that he took the checks from the Gilmore mailbox. Postal regulations prohibit the use of mailboxes for matters other than United States mail. 39 Code of Federal Regulations § 43.7(b). This evidence does not negative every reasonable inference of innocence, but from evidence of past examples and the custom of transmitting social security checks by mail, a jury could conclude beyond a reasonable doubt that the checks taken by Welch had been mailed. As this Court said in Stevens: "We do not think it is necessary, as Stevens urges, that there be positive and direct testimony that there was a placing in the mails, or positive and direct testimony of a taking from the mails. The showing of the customs, usages and practices in the course of business with the evidence of the letter appearing in the customary channel of mail matter is enough to carry the question to the jury." 306 F.2d at 835. Cf. Pereira v. United States, 1954, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435; Moffitt v. United States, 10 Cir. 1946, 154 F.2d 402, cert. den'd, 1946, 328 U.S. 853, 66 S.Ct. 1343, 90 L.Ed. 1625. We take judicial notice of the fact that millions of social security checks must be processed every month, and most of the work is done by machines. Even in criminal cases the courts take judicial notice of the normal channels and customs of commerce. United States v. Rappy, 2 Cir. 1947, 157 F.2d 964, cert. den'd, 1947, 329 U.S. 806, 67 S.Ct. 501, 91 L.Ed. 688; accord, United States v. Bayer, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654; cf. Pereira v. Unit-

ed States; Moffitt v. United States. In the computer, automated world of today [6a] it would be difficult if not impossible to find a government employee who would remember that he mailed a particular check, or a postal employee who remembers that he processed it.[7] Mailing is the customary and the only practical way of distributing the checks; proof of receipt through the mail is sufficient to prove the mailing. As the Second Circuit puts it:

"[T]he evidence adequately supports the conclusion that the check was actually stolen from the mails, for a letter properly mailed and never received by the addressee, but found in quite improper and misusing hands, can be found to have been stolen from the mails in the absence of any other explanation being proffered. The jury need not grasp for improbable explanations; for instance, that the postman casually lost the letter which this defendant or a confederate casually found, and which they made no attempt to return as should have been done. We have reiterated many times that the jury may make common-sense inferences from the proven facts in both civil and criminal cases." United States v. Hines, 2 Cir. 1958, 256 F. 2d 561, at 564.

▮ E. The appellant complains that there was insufficient evidence to convict because the only evidence of Smith's guilt was the uncorroborated testimony of his co-defendants, Welch and Henderson. Even if we eliminate all other evidence, there is still enough evidence to support the verdict. The long standing federal rule, however, is that the uncorroborated testimony of an accomplice is sufficient to convict (United States v. Agueci, 2 Cir. 1962, 310 F.2d 817) although it is proper to instruct the jury to consider such testimony with

---

6a. See Brown, Electronic Brains and the Legal Mind: Computing the Data Computer's Collision with Law, 71 Yale L. Jour. 240 (1961); Colonial Life & Acci-

dent Ins. Co. v. Wilson, 1957, 5 Cir., 246 F.2d 922, at 925.

7. See 39 Code of Federal Regulations, § 43.7(b).

caution. United States v. Agueci; United States v. Bentvena, 2 Cir. 1963, 319 F.2d 916, 940 and note 14. The testimony of Welch and Henderson resolves most of the problems this appeal presents.

### III.

▪ A. The appellant, relying on United States v. Askey, S.D.Tex.1952, 108 F.Supp. 408, argues that the mail theft *indictment* is defective for its failure to allege that the letters taken from the mailbox had ever been mailed. Askey struck down an indictment merely alleging that matter had been removed from a letter: "There is no allegation that the letter, from which defendant abstracted the treasury check, was a *mailed* letter *or one which had been removed from some office, station, letter box, receptacle or authorized depository.*" 108 F.Supp. at 409 (Emphasis supplied.) The indictment in this case *did* allege that the letters had been removed from a letter box. We need not, therefore, decide whether Askey is correct. The regulations prohibit the use of a letter box or other authorized depository for matter other than United States mail.[8] The indictment should not be required to negative the possibility that a federal regulation has been violated. Cf. Banks v. United States, 7 Cir. 1957, 239 F.2d 407, affirming 140 F.Supp. 837. An indictment cannot negative every conceivable possibility. United States v. Alsup, 5 Cir. 1955, 219 F.2d 72, cert. den'd, 348 U.S. 982, 75 S.Ct. 572, 99 L.Ed. 764; cf. Hagner v. United States, 1932, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861. The indictment in the present case was well drawn.

▪ B. The appellant attacks the forgery indictment on the ground it fails to set out the exact language of each of the stolen checks. The indictment identifies the checks by date, amount, payee, the drawer of the check, and the payee's address. Time was when the indictment for receiving stolen mail had to set out the circumstances with the full rigor of the common law indictment for larceny. Vernon, Postal Frauds and Crimes, Ch. 4, § 2 at 25–26. The modern view is that forged or counterfeited documents need not be set out in full in the indictment. They need only be sufficiently identified to inform the accused of the charge against him and protect him against double jeopardy. Neville v. United States, 5 Cir. 1959, 272 F.2d 414; Dendy v. United States, 2 Cir. 1961, 290 F.2d 222; United States v. Taylor, 2 Cir. 1953, 207 F.2d 437. We hold that the descriptions of the checks in the forgery indictment were sufficient to protect the defendant.

▪ C. Finally, the appellant contends that the forgery indictment is defective in alleging forgery "of the check" when the evidence showed forgery of the endorsement alone. The indictment stated that the defendant "did falsely forge" the check "by forging the endorsement of the payee's name thereon." This allegation clearly saves the indictment. Dendy v. United States. The indictment fully informed the defendant of the nature of the charge against him. Hagner v. United States. We need not decide whether the indictment would have been good if it had not specified forgery of the endorsement.[9]

The judgment is affirmed.

---

**8.** See Colonial Life & Accident Ins. Co. v. Wilson, 5 Cir. 1957, 246 F.2d 922, at 925; Brown, "Electronic Brains and the Legal Mind: Computing the Data Computer's Collision With Law", 71 Yale L.J. 239 (1961).

**9.** Compare Rogers v. United States, 5 Cir. 1962, 304 F.2d 520, 523. The evidence showed forgery of the endorsement alone. The dissenting judge questioned one count of the indictment which alleged forgery "of the check" but not another count which alleged forgery "of the check by forging the endorsement".