**UNITED STATES of America,**

v.

**Jessie C. DOUGLAS.**

**Crim. No. 197–69–N.**

United States District Court,
E. D. Virginia,
Norfolk Division.

April 16, 1970.

James A. Oast, Jr., Asst. U. S. Atty., Norfolk, Va., for plaintiff.

Jay M. Ball, Norfolk, Va., for defendant.

## MEMORANDUM DECISION

KELLAM, District Judge.

Jessie C. Douglas stands charged in a two count indictment under Title 18 § 495 U.S.C. with (1) forging and (2) uttering a United States Treasurer's check dated December 30, 1967, payable to Carol L. Adams, in the amount of $95.-20. Defendant entered a plea of not guilty and waived trial by jury.

Defendant and his wife lived in a second floor apartment in Robin Hood Apartments. Carol Adams lived across the hall from defendant. Mrs. Adams usually received her Navy allotment check about the last of the month, or the first of the succeeding month. When the check due December 31, 1967, or January 1, 1968, did not arrive, she notified the authorities. The check in question is Government Exhibit 1. The name "Carol L. Adams" as endorsed on the check is a forgery. Below such endorsement appears defendant's endorse-

ment and his address. He cashed the check at a Be-Lo Super Market where he had previously been employed.[1] The cashier at the market knew defendant. The check was presented to the cashier between 8:30 and 9:30 in the morning, the first part of the week. He told the young lady he was cashing it for a relative, either a sister or cousin, the cashier did not remember which.

When interviewed by an Agent of the Secret Service, defendant told the Agent he cashed the check for an unknown white male, who claimed to be the husband of the payee, and that he turned the full proceeds of the check over to that person. When testifying in his own behalf at trial, defendant said he had been playing pool with an unknown sailor; that he won $37.00 from the sailor in the pool game; that the sailor said he did not have the money, but would meet him next day and pay him. Next morning the sailor met defendant at his car, and they drove some seven miles to the super market where defendant cashed the check. He said that when the sailor handed him the check, it was already endorsed; that the sailor sat in the car while he went in, wrote his name on the back of the check and cashed it. He returned to the car and after taking out his $37.00, he gave the balance of the check to the sailor. He never saw the sailor again. Although he said he gave the $37.00 to his wife, she said she never received or saw any part of it. Shortly thereafter defendant and his family moved from the apartment to North Carolina.

Title 18 § 2 provides that "whoever commits an offense against the United States or aids or abets * * * its commission, is punishable as a principal."

· The evidence establishes beyond any reasonable doubt that the endorsement of Carol L. Adams is a forgery; that the check had been stolen shortly prior to its uttering;[2] that it was in the admitted exclusive possession of defendant, without any satisfactory explanation of his possession;[3] he uttered and published it as true and genuine, and received, at least, a considerable part of the proceeds.

■ The law applicable to these facts is summed up in Bullock v. Commonwealth of Virginia, 205 Va. 558, 138 S. E.2d 261, where at page 265, the Court said "the unexplained possession of a forged instrument by one who endeavors to obtain money thereon is prima facie evidence that such person forged the instrument," but the presumption may be rebutted by an explanation satisfactory to the fact trier as to how he came into possession. In 36 Am.Jur.2d, Forgery, § 44, page 706, it is said:

To sustain a charge of forgery, it is not necessary to prove the execution of the false instrument by the defendant. The unexplained fact that the defendant had possession of the forged instrument, knowing its character and intending to pass it, is sufficient in some jurisdictions to justify an inference that he forged it, or to constitute prima facie evidence that he forged it, which, while it does not compel a finding that he did the forging and may be rebutted by an explanation satisfactory to the jury of how he came into possession of the instrument, will warrant the submission of that issue to the jury and will sustain a finding that the defendant did the forging. In other jurisdictions, such possession by the defendant raises a presumption which, if unexplained, becomes conclusive.

1. He had about a week earlier been discharged from this employment because his wages had been garnisheed.

2. The check is dated December 30, 1967; was mailed about that time; was cashed about the time of its date and stamped by the bank January 8, 1968.

3. He made three different explanations of his possession, none of which are satisfactory.

In a prosecution for uttering, as in the case of forging an instrument, the unexplained possession of a forged instrument that the defendant utters or offers to utter gives rise to an inference that he either forged the instrument or knew it to be forged, or to a presumption that he knew of the forgery, which presumption becomes conclusive in the absence of a reasonable explanation.

To the same effect is 37 C.J.S. Forgery § 80b, page 91.

A handwriting expert testified he could not definitely say the endorsement of Carol L. Adams was the handwriting of defendant, but it was probable.

The facts here are very similar to the facts in United States v. Bell, 407 F.2d 862 (4th Cir. 1969). In holding a conviction justified on the facts, the per curiam opinion says:

Bell admitted having put his own name on the check as a second endorser, but he claimed that the forged endorsement "Roberta Nichols" had been written on the check by a woman whom he believed at the time to be the real Roberta Nichols. Although Bell argued that he had merely aided the woman to cash what he believed to be her own check, the evidence was ample to support his conviction under count one as an aider and abettor to the forging of the check.

The defendant's conviction for uttering the Nichols check is supported by his admission that he co-endorsed the check and was present when it was cashed. The admission was partially corroborated by an employee of the Checker Cab Association where the check was cashed.

Defendant denied any knowledge of the second check, payable to J. M. and G. Pulliam. A Government handwriting expert testified that it was probable that Bell had written the forged endorsement "James Pulliam" on the check and that it was highly probable that he had written the endorsement "Geraldine Pulliam." The check address was the same as the defendant's, and he admitted being a customer at the gas station where the check was cashed.

See also Jolly v. United States, 411 F.2d 618 (9th Cir. 1969); United States v. Lyles, 380 F.2d 769 (6th Cir. 1967).

■ The evidence adequately supports the conclusion the check was actually stolen from the mails, "for a letter properly mailed and never received by the addressee, but found in quite improper and misusing hands, can be found to have been stolen from the mails in the absence of any other explanation being proffered." Smith v. United States, 343 F.2d 539 (5th Cir. 1965); United States v. Hines, 256 F.2d 561, 564 (2d Cir. 1958); Whitehorn v. United States, 380 F.2d 909 (8th Cir. 1967). In the *Hines* case, the Court said that defendant's "possession of the stolen check within two weeks of the time it was stolen, absent a reasonable explanation of such possession, affords an adequate basis for an inference that the party in possession knew the check was stolen."

■ The Court therefore finds beyond a reasonable doubt that defendant is guilty of the charge of (a) forging and (b) uttering the check, knowing the endorsement thereon to have been forged.