**UNITED STATES of America,**
**Appellee,**

v.

**Edward LOPEZ, Defendant-Appellant.**

**No. 509, Docket 71-2068.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 16, 1972.

Decided March 21, 1972.

Michael A. Young, Legal Aid Society, New York City (Robert Kasanof, The Legal Aid Society, New York City, on the brief), for defendant-appellant.

Ira Lee Sorkin, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y.; Robert G. Morvillo and Peter F. Rient, Asst. U. S. Attys., on the brief), for appellee.

Before FEINBERG and TIMBERS, Circuit Judges, and THOMSEN, District Judge.*

FEINBERG, Circuit Judge:

Defendant Edward Lopez appeals from a judgment of conviction, after a non-jury trial in the United States District Court for the Southern District of New York before Lloyd F. MacMahon, J., on two counts of possession of the contents of stolen mail in violation of 18 U.S.C. § 1708.[1] The sole issue on appeal is whether the district court should have granted appellant's motion to dismiss both counts of the indictment on the ground that the Government's evidence failed to establish that the letters, whose contents defendant allegedly had in his possession, were stolen from the mails. We find that the district judge properly denied the motion and affirm the conviction.

## I

The Government's proof on the first count established that on April 21, 1971 Eutimio Vitullo mailed a check, drawn payable to "Travel Agenda" for the sum of $120, to Travel Agenda, 119 West 57 Street, Suite 1008, New York City. On the morning of April 23, 1971, a letter carrier brought a bundle of between 10 to 15 pieces of mail to that address. When he found the door to Suite 1008 locked, he left the bundle of mail on the floor of the hallway in front of the door. Travel Agenda, however, received no mail that morning and never received the letter from Vitullo. On April 28, 1971, defendant cashed the Vitullo check at a bank in New York City where he had previously opened an account under an assumed name.

On the second count the Government submitted evidence that on May 11, 1971, Mary Grace placed a letter in a "mail receptable" or a "bin" in the lobby of 116 John Street, New York City. The letter, containing a check payable to Luis Anthony Levine for $90, was addressed to Laurie Levine, c/o Leonard Goldberg, 853 Seventh Avenue, New York City. The addressee, however, never received the letter. On May 19, 1971, defendant was arrested while attempting to cash the Levine check at another bank in New York City where he had also opened an account under an assumed name.

## II

Appellant argues that the Government's evidence failed to establish that either the Vitullo or the Levine check was the contents of stolen mail within the meaning of 18 U.S.C. § 1708. Under that statute such a showing was necessary before defendant could be convicted of illegal possession of the two checks. We consider below appellant's arguments with respect to each check.

### A. The Vitullo check

Appellant's argument as to the first count presents an issue of statutory construction—whether a letter stolen after a postman has left it in front of the addressee's door is stolen mail under

* Of the District of Maryland, sitting by designation.

1. Appellant received concurrent three year sentences.

section 1708. The Government contends that section 1708 does reach such conduct, but it also argues that we need not decide that statutory question in this case. It claims that on the evidence submitted the district judge could properly have concluded that the Vitullo check was stolen before the letter carrier delivered the bundle of letters to Travel Agenda's front door. In support of this argument the Government relies on United States v. Hines, 256 F.2d 561 (2d Cir. 1958). There we held that a letter shown to have been "properly mailed and never received by the addressee, but found in quite improper and misusing hands, can be found to have been stolen from the mails in the absence of any other explanation being proffered." 256 F.2d at 564. When such facts are established it is reasonable to assume that the letter was stolen rather than inadvertently lost or misplaced by postal officials. But the Government's proof here, unlike that in *Hines*, showed not only that the letter was stolen but also that it might have been taken along with the other pieces of mail left outside Travel Agenda's door on April 23. Thus, while it might be possible to affirm on the basis of *Hines*, we have enough doubt about the correctness of doing so to go on to consider whether a letter left at the door would still be under the protection of federal law.

To resolve that question we must turn to the statute itself, which provides in relevant part as follows:

> Whoever steals . . . from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter . . or . . . .

> Whoever . . . unlawfully has in his possession, any letter . . . or any article or thing contained therein, which has been so stolen . . . knowing the same to have been stolen . . . .

> Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1708. Defendant argues that section 1708 applies only to letters which are stolen from an "authorized depository for mail matter" or a mail carrier. The Government, on the other hand, contends that the section has broader application. It claims that the Vitullo letter was stolen while it was in a "mail route" within the meaning of the statute.

■ While the statutory language is not without difficulties, we think the Vitullo letter was still within the custody of the Government, and thus protected by the statute, when it was left in front of Travel Agenda's door. The variety of terms employed in the statute indicates that it was broadly conceived to assure the proper functioning of the postal system. And the cases have so construed the statute. See, *e. g.*, Rosen v. United States, 245 U.S. 467, 38 S.Ct. 148, 62 L. Ed. 406 (1918) (interpreting the predecessor to section 1708); Smith v. United States, 343 F.2d 539 (5th Cir.), cert. denied, 382 U.S. 861, 86 S.Ct. 122, 15 L. Ed.2d 99 (1965). In *Rosen* the Supreme Court held that unlocked "boxes placed by tenants for the receipt of mail in the halls of buildings in which they had their places of business" were "authorized depositor[ies] for mail matter" within the meaning of the statute. 245 U.S. at 469, 38 S.Ct. at 149. The Court stated:

> The letters which were stolen did not reach the manual possession of the persons to whom they were addressed, but were taken from an authorized depository over which the act of Congress, by its express terms, extended its protection until its function had been served.

245 U.S. at 473, 38 S.Ct. at 151. Similarly, in *Smith* the court held that stealing letters from an unlocked box placed just inside the front door of a hotel and used for general delivery of mail to all residents violated section 1708 because

the box was a "letter box . . . or other authorized depository for mail matter."

Decisions such as *Rosen* and *Smith* illustrate the breadth of protection afforded the mails by the statute now before us. A fair reading of those cases, we think, requires the conclusion that Congress intended to protect mail left at the addressee's front door as well as letters left in the addressee's mail box. The federal interest in assuring that mail is received by the proper hands is the same in either case. We have no doubt, therefore, that the theft of the Vitullo letter violated the purposes of section 1708. The difficulty in this case, as we have already suggested, stems from the statutory language itself. The statutory term "authorized depository for mail matter," relied on in *Rosen* and *Smith,* is inapplicable to the facts of this case. Section 1708, however, does contain broader language, which could cover the theft of the Vitullo letter. The section forbids anyone from stealing from or out of "any mail" or "any mail route." Cases construing the former term have not been frequent. *Cf.* United States v. Inabnet, 41 F. 130 (D.S.C.1890). As to the phrase "any mail route," this court has previously relied on that language in section 1708 in affirming a conviction under the statute. United States v. Collins, 349 F.2d 863, 866 (2d Cir. 1965), cert. denied, 383 U. S. 960, 86 S.Ct. 1228, 16 L.Ed.2d 303 (1966). We confess, however, that we have found no authority construing

"mail route" in the context of the facts here, and the legislative history of the term does indicate that its genesis was descriptive of the location of mail boxes.[2] However, the term is in the statute and has a common meaning, the core of which is the path or places where mail is collected and delivered.

Despite the absence of clear authority covering the precise statutory issue before us, we think section 1708, when read in the light of its obvious legislative purpose, prohibited the theft of the Vitullo letter. While construing "mail route" or "mail" in the broadest sense might render some of the remaining portions of the statute superfluous in whole or in part, we see no need to go that far here. All we hold is that "mail route" and "mail" have an independent significance apart from mail box or receptacle; the former term at least includes a place such as an addressee's doorstep where mail is left by the letter carrier, and the latter term includes the letter so stolen. We believe this construction is in accord with the wise admonition of the court in *Smith* that in interpreting section 1708 a "judicial appraisal of the realities of delivering and receiving mail in a modern urban environment" is required. 343 F.2d at 542.

**B. *The Levine check***

Defendant's second argument is that the Government's evidence on count 2 was insufficient to show that the Levine check was actually mailed before it was stolen. Defendant contends that the

2. Section 1708 was enacted in 1948 as part of the comprehensive revision of the federal criminal laws. The brief legislative history dealing with the section indicates that it was based on what were formerly §§ 317 and 321 of Title 18. U.S.Code Cong. Service, 80th Cong.2d Sess. (1948) (5 Legislative History Title 18, 2576). The history further reveals that the words "letter box, mail receptacle, or any mail route" in § 1708 were taken from § 321. The latter section, however, read as follows:

> Whoever shall willfully or maliciously injure, tear down, or destroy any letter box or other receptable intended or used

> for the receipt or delivery of mail *on any mail route,* . . . or steal such mail from or out of such letter box or other receptacle . . . shall for every such offense be punished by a fine of not more than $1,000 or by imprisonment for not more than three years. [Emphasis added.]

One wonders, after tracing the origin of the phrase "or any mail route" in § 1708, whether the substitution of the connective "or" for the preposition "on" before the words "mail route" was intentional or the result of a slip of the legislative pen.

stipulated testimony of Mary Grace that she "mailed" the check in a "mail receptacle" or "bin" located in the lobby of a building in New York City was insufficient to show that the letter was placed in an "authorized depository" for mail and thus was brought within the custody of the Government. We disagree. The terms "mail receptacle" or "authorized depository for mail matter" in section 1708 have been broadly defined by postal regulations. See 39 C.F.R. § 151.1 (1971).[3] The stipulated testimony, though admittedly meager, was sufficient to allow the inference that the check was placed in such a receptacle.

The conviction is affirmed.

---

3. The regulation provides in relevant part:

(a) *Designation as authorized depository.* Every letterbox or other receptacle intended or used for the receipt or delivery of mail on any city delivery route, rural delivery route, star route, or other mail route is designated an authorized depository for mail within the meaning of 18 U.S.C. sections 1702, 1705, and 1708.

(b) *Use for mail only.* Receptacles described in § 151.1(a) shall be used exclusively for mail . . . .