UNITED STATES of America, Appellee,

v.

Victor ROGLIERI, Appellant.

No. 321, Docket 82–1225.

United States Court of Appeals, Second Circuit.

Argued Sept. 3, 1982.

Decided Feb. 15, 1983.

884

Phylis Skloot Bamberger, New York City (The Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for appellant.

Michael S. Feldberg, Asst. U.S. Atty., S.D.N.Y., New York City (John S. Martin, Jr., U.S. Atty., S.D.N.Y., Gerard E. Lynch, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before KEARSE, CARDAMONE and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Victor Roglieri appeals from a judgment of the United States District Court for the Southern District of New York, Judge Milton S. Pollack, sentencing him to two concurrent three-year prison terms and a $4,000 fine after his conviction by a jury of two counts of possessing checks stolen from the mail in violation of 18 U.S.C. § 1708 (1976).[1] On appeal, Roglieri argues that the

---

1. 18 U.S.C. § 1708 reads:

   Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or

   Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal

evidence was insufficient to prove the checks were stolen from the mail and that the trial judge incorrectly instructed the jury on the elements of the crime, including aiding and abetting.

We affirm.

## BACKGROUND

On September 21, 1981, M & T Chemicals of Rahway, New Jersey, issued a check for $14,355.21 to Amax Copper, Inc. ("Amax"), addressed to P.O. Box # 12038, Church Street Station, New York, New York 10049. On September 25, 1981, Fritzche Dodge Olcott, Inc. issued a check for $52,601.98 to Monsanto Co., addressed to Box 8495, Church Street Station, New York, New York 10049. Neither check was received by the intended recipient.

On October 7 and 9, 1981, respectively, the two checks were deposited in Roglieri's account at the Poughkeepsie Savings Bank. Each was visibly altered with the name "Edward Lynch" typed above the payee company in a different typeface, and each was endorsed by Edward Lynch and Victor Roglieri. Roglieri had opened the account on September 9, 1981, and, until the deposits in question, had kept only a few hundred dollars in it.

Roglieri claimed to have received the checks in question from a man named Edward Lynch, whom he had met a few times over drinks at a Poughkeepsie bar. Although he barely knew Lynch, his address or even his telephone number, Roglieri testified that he agreed to cash the checks in return for some of the proceeds. He then took the checks and deposited them in his own account, and, at Lynch's direction, withdrew portions of the proceeds in cash, which he gave to Lynch.

card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or

Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any

## DISCUSSION

### Sufficiency of Evidence

In order to establish a violation of 18 U.S.C. § 1708 (1976), the government must prove that matter was stolen from the mail and that the defendant possessed or received it knowing it had been stolen. However, it is not necessary to prove that the defendant knew the matter was stolen from the mail. *United States v. Hines,* 256 F.2d 561, 563 (2d Cir.1958).

Roglieri concedes the evidence proved that he knowingly possessed stolen checks. He asserts, however, that the evidence was insufficient to establish that the checks were stolen from the mail. In addressing this argument, we must assess the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

The government may meet its burden as to the element of theft from the mail by proving that an item in a defendant's possession was mailed to but never received by the addressee. As we said in *United States v. Lopez,* 457 F.2d 396, 398 (2d Cir.), *cert. denied,* 409 U.S. 866, 93 S.Ct. 162, 34 L.Ed.2d 114 (1972):

> [A] letter shown to have been "properly mailed and never received by the addressee, but found in quite improper and misusing hands, can be found to have been stolen from the mails in the absence of any other explanation being proffered."... When such facts are established it is reasonable to assume that the letter was stolen rather than inadvertently lost or misplaced by postal officials.

In the present case, the corporate cashier of M & T Chemicals, John Abbruzzese, identified the Amax check and testified that the check as issued did not bear the name of Edward Lynch. Abbruzzese also testified

article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

that his practice after he received a check from his company's computer room was to pass it to other employees for signature and mailing. Similarly, Edward Cohen, the accounting manager of Fritizche Dodge, testified that the practice of his company is to mail checks such as that issued to Monsanto. There was no particularized evidence of the mailing of either check.

Evidence of non-receipt was provided by officials of the banks which maintained post office lock boxes for the payee corporations at the Church Street Station. John McKay of Amax's bank described his firm's practice of retrieving checks from the post office by messenger. He testified that his bank never received the Amax check because it did not bear a stamp indicating such receipt. Nancy Van Ness, vice-president of the bank which collected checks for Monsanto from the Church Street Station, testified about her firm's practice of retrieval by messenger and stated that the absence of a receipt stamp indicated that her bank also had never received the Monsanto check. Each bank uses its own employees as messengers to retrieve mail from its Church Street Station lock box.

The evidence both as to mailing and non-receipt of the checks in question proved only the routine practice of the issuer and intended recipients. It did not include direct testimony by someone with personal knowledge of the mailing or non-receipt of the particular checks. Where checks issued by sizeable firms to other similar firms or banks are involved, the existence of evidence other than routine practice would be exceptional. We are not prepared to say that such evidence, which is subject to cross-examination on both the usual procedures and the frequency of lost checks within the particular firm, does not go a long way to proving both the mailing and non-receipt of particular items. *Cf. United States v. Huber,* 603 F.2d 387, 399 (2d Cir. 1979) (absent evidence to the contrary, ordinary practice sufficient to prove mailing for purposes of mail fraud where receipt is conceded), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 758 (1980); *United States v. Toliver,* 541 F.2d 958, 966 (2d Cir.1976) (same).

Nevertheless, we are also reluctant to go beyond existing precedent and hold that evidence of routine practice alone proves beyond a reasonable doubt that a particular item was stolen from the mail where large commercial firms are involved at each end of a transaction. None of our prior decisions have gone that far. For example, while *Lopez* held that evidence of mailing and non-receipt would support a finding of theft from the mail, there was direct evidence in the case concerning the mailing and non-receipt of the particular item. Similarly, in *United States v. Indelicato,* 611 F.2d 376 (1st Cir.1979), 68 Treasury checks made out to individual payees were stipulated to have been mailed but not received. Since individuals usually receive mail directly from the Postal Service, evidence of its non-receipt is by its nature particularized. *Lopez, supra.* Where firms are involved at both ends of a transaction, however, and evidence of routine practice alone is available, the hands of numerous unidentified persons in accounting offices, mail rooms and messenger services are usually involved and many opportunities for theft exist at various stages in transit other than while in the mail, thus reducing greatly the probability that the actual theft was from the mail. *See United States v. Robinson,* 545 F.2d 301 (2d Cir.1976).

The mail fraud cases cited in the concurring opinion do not, we believe, support the view urged by Judge Cardamone. In both *Huber* and *Toliver,* receipt of the particular items was acknowledged and the only question was whether the mails or some other form of transportation was used. Evidence of a routine practice of mailing such items provides a logical base to conclude that the mails were in fact used on the occasions in question. Theft involving large firms at both ends of a transaction, however, generally entails the disappearance of items at an unknown point in a lengthy chain of custody, of which the Postal Service is only one part. In these circumstances, the conclusion that a particular item was stolen from the mail seems no more plausible than the conclusion that it was stolen elsewhere.

In Roglieri's case, however, there is other evidence to prove that the checks possessed were stolen from the mail. While both checks were mailed from different locations and, if received by the addressees, would have been picked up by different messengers, they were both addressed to boxes in the Church Street Station. This evidence of a common location while in the mail supplies, we believe, sufficient particularized evidence to support a finding that the checks in question were stolen while in the mail. Evidence of routine practice as to mailing by different senders and receipt by different addressees along with a single common location occurring in the mail is enough, absent other circumstances, to allow a jury to find that the checks were stolen from the mail.

Hesitation in reaching this result is caused by *Robinson, supra.* In that case, a number of checks originating in three separate disbursing offices, and of a kind always received by the addressees in the mail, were "laundered" by the defendant. We reversed Robinson's conviction on the grounds that while the evidence surely proved that some of the checks were stolen from the mails, that fact was not proven as to any particular check mentioned in the indictment. That conclusion is in no way inconsistent with our holding here, for *Robinson* did not involve evidence of a common location in the mail.

Nevertheless, we do rely upon evidence pertaining to both checks to prove the theft of each from the mail, and the following passage in *Robinson* gives us pause:

Thus, although it may be "most unlikely" that the seven checks would all be stolen from three different disbursement offices and then transported individually to the grocery store, it is not so unlikely that an individual check would be so stolen and so transported. The individual checks, which were the subject of separate counts of the indictment, cannot be lumped together to support the inference urged by the government. With respect to Robinson's guilt or innocence as to any particular check, evidence concerning other checks, whether or not included in the indictment, was merely similar act evidence. Such evidence ... was not relevant to prove that any particular check covered by the indictment was stolen from the mails. *See* Fed.R.Evid. 404(b) .... Consequently, in determining whether there was sufficient evidence to support the charge that the checks possessed were stolen from the mails, we cannot draw any inference from the fact that some checks originated from different out-of-state disbursement offices.

*Id.* at 304. If that passage is taken to mean that Rule 404(b) prohibits use of evidence as to other checks to prove theft from the mail of a particular check, then *Robinson* would preclude the reasoning we follow here. *Robinson* need not be read so restrictively, however, for the evidence of the other checks in that case did not reveal a common location in the mail and was thus insufficient, even if admissible, to support an inference that a particular check was stolen from the mail. *Robinson* can, therefore, be limited to its holding as to the sufficiency of the evidence, and we believe it should.[2]

In drawing an inference from the circumstances relating to both checks, we in no way undermine either the language or purpose of Rule 404(b). It expressly prohibits use of such evidence to prove character but permits it for the purpose of proving matters such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The fact that the two checks negotiated by Roglieri were addressed by different senders to the same postal station, to be picked up by different messengers, is plainly relevant to prove that the best opportunity for someone to have stolen both checks was at that Station.

*The Jury Charge*

We turn next to Roglieri's claim that the trial judge's instructions to the jury (i) failed to inform the jurors that the check

---

**2.** This opinion has been circulated to the active Judges of the Court before filing.

had to be stolen while in the mail; (ii) failed to inform the jurors that an aider and abettor must know that the check was stolen; and (iii) improperly took the issue of whether the checks were stolen from the mail from the jury. We reject these claims.

■ Roglieri's trial counsel explicitly stated that he had no objection to the charge and thus did not preserve these claims of error. Nor did he request that any particular instructions be given the jury. In the absence of plain error, trial counsel's failure to take exception to the charge at trial constitutes a waiver of Roglieri's present claims of error, Fed.R.Crim.P. 30.

Even if Roglieri had preserved these claims, however, a fair reading of the court's charge as a whole, *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), amply refutes them. The charge contained references to theft from the mails so numerous that the jury had to have understood that such a finding was necessary. Moreover, the charge on aiding and abetting clearly incorporated the elements of the substantive crime which the jury had been told included knowledge that the check was stolen.

■ Finally, Roglieri argues that the trial court's statement that credibility was a major issue in the case diverted the jury's attention from other issues, such as whether the checks were stolen from the mails. These arguments seize upon isolated statements and distort the charge as a whole. The trial judge had already instructed the jury at some length that they had to determine whether the checks had been taken from the mail and that the burden was on the government to establish this element beyond a reasonable doubt. This is not a case such as *Hines, supra,* in which the judge instructed the jury: "You don't have to bother about who stole it, or how it was stolen. That check was stolen, there is no question about it." *Id.* at 564. In calling the jury's attention to credibility, the trial court here simply underlined what was a major issue in view of Roglieri's denial of any knowledge that the checks were stolen.

In no way did this comment appear to relieve the jury of making other factual determinations.

Affirmed.

CARDAMONE, Circuit Judge, concurring:

I am in agreement with most of the majority's opinion and with the result it reaches in this case, but I cannot agree with its reasoning on the issue of the sufficiency of evidence of customary practices to prove theft from the mail. In the context of mail fraud prosecutions, which necessarily require similar proof of mailing, our Court has repeatedly upheld the use of evidence of routine business practices to establish that on a particular occasion an item had been placed in the mail. *See, e.g., United States v. Huber,* 603 F.2d 387, 399 (2d Cir. 1979), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 758 (1980); *United States v. Toliver,* 541 F.2d 958, 966 (2d Cir.1976). We have also held that an addressee's non-receipt may be proven by evidence that an item which is regularly received in the mail did not arrive on the occasion in question. *See, e.g., United States v. Robinson,* 545 F.2d 301, 303–04 (2d Cir.1976). A jury armed only with this type of circumstantial evidence of mailing and non-receipt could infer that an item was properly mailed and not received by the addressee. If the item is then found in improper hands and no other plausible explanation is provided, the jury may conclude beyond a reasonable doubt that the person in whose possession the item was found stole it from the mails. *See United States v. Lopez,* 457 F.2d 396, 398 (2d Cir.), *cert. denied,* 409 U.S. 866, 93 S.Ct. 162, 34 L.Ed.2d 114 (1972). It is true that *Lopez* involved some direct evidence of mailing and non-receipt while we are here faced with circumstantial evidence, but I think that *Lopez* read together with *Huber, Toliver* and *Robinson* can only lead to the conclusion that circumstantial evidence of mailing and non-receipt is sufficient in and of itself to place before the jury the issue of theft from the mail.

It is a fact of modern-day life that sizeable organizations, such as the companies

and banks involved in this case, mail and receive through the postal system innumerable items on a daily basis. Checks mailed in large numbers simply cannot be singly recollected. The same is true of checks received in large numbers from the mail. Consequently, the only proof of mailing and non-receipt ordinarily available in cases of this nature will be customary practices. *Cf. United States v. Indelicato,* 611 F.2d 376, 381–82 & n. 4 (1st Cir.1979) (mail theft statutes must be read in light of the realities of delivering and receiving mail in a modern urban environment). Nothing has been called to our attention indicating abuse by the prosecution or unfairness to defendants in the use of customary business practices to prove mailing and non-receipt. Permitting such proof is a good rule, one which has been established in similar situations, and one that should be maintained.

By holding that evidence of customary practices, without more, is insufficient to establish mailing and non-receipt, my colleagues unnecessarily increase the burden of proof on the government in theft from the mail cases under 18 U.S.C. § 1708. The majority's rationale is based on their concern with the possibility that in cases such as the one before us any of the several hands involved in mailing and receiving the checks had an opportunity to steal them at various non-mail stages in transit from company to company. Thus, the majority concludes that in this instance there is a reduced probability that the theft which occurred was from the mail. But the government, even in criminal cases, need not offer absolute, unequivocal proof beyond all doubt or to a mathematical certainty. If such proof was necessary, circumstantial evidence of the elements of a crime would never be sufficient to establish guilt beyond a reasonable doubt. Circumstantial evidence is intrinsically no different from testimonial evidence. *See Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954). If the evidence of customary practices proffered by the government in this case indicated something other than that the checks were stolen from the mail, it was up to defense counsel to comment on the ambiguity of the government's proof and up to the jurors to decide if that ambiguity raised a reasonable doubt in their minds as to whether the theft was from the mail. In this case the jury concluded that it had no doubt that the checks were stolen from the mail. Unless we are to rule that circumstantial evidence such as customary practices is suspect proof and overrule *Huber, Toliver, Robinson* and *Lopez,* it seems to me that we must conclude that evidence of customary practices is sufficient standing alone to establish mailing and non-receipt and, therefore, to prove theft from the mail beyond a reasonable doubt. It is on this basis that I vote to affirm the judgment of conviction.