UNITED STATES of America, Appellee,

v.

Gary GRAVES, Defendant-Appellant.

No. 701, Docket 83–1150.

United States Court of Appeals, Second Circuit.

Argued Jan. 3, 1983.

Decided June 6, 1984.

See also, D.C., 571 F.Supp. 472.

Richard D. Friedman, New York City, for defendant-appellant.

Michael Chertoff, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., Roanne L. Mann, Asst. U.S. Atty., New York City, on the brief), for appellee.

Before NEWMAN, and WINTER, Circuit Judges, and MACMAHON, District Judge.*

JON O. NEWMAN, Circuit Judge:

Gary Graves appeals from a judgment entered in the District Court for the Southern District of New York (Milton Pollack, Judge), after a jury trial, convicting him on two counts of possession of checks stolen from the mail, in violation of 18 U.S.C. §§ 1708 and 2 (1982). On appeal, Graves principally contends that the evidence presented at trial was insufficient to prove that the checks were stolen from the mail. For reasons that follow, we disagree and affirm the judgment of conviction.

### Facts

The Government's evidence at trial concerning the theft of the checks was based primarily on a stipulation. According to that stipulation, if called as a witness, a security officer for the Mountain Bell Telephone Company of Denver, Colorado, would testify that, according to Mountain Bell's business records, on June 31, 1981, Mountain Bell placed in the United States mail a check in the amount of $508.07 ("Mountain Bell check"). The check was made payable to the Western Electric Company and was addressed to Western Electric's office at 222 Broadway, New York City. The stipulation also stated that, if

---

* The Honorable Lloyd F. MacMahon of the United States District Court for the Southern District of New York, sitting by designation.

called as a witness, a security manager for the Western Electric Company would testify that he had reviewed the company's business records and "determined that a check expected in the mail from Mountain Bell in July or August, 1981, in the amount of $508.07, was never received nor deposited by Western Electric."

The stipulation also reflected that, if called to testify, a controller of SSC & B, Inc. of New York City would testify that he reviewed SSC & B's business records and determined that on September 11, 1981, SSC & B deposited into the mail a check in the amount of $8,457.50, which was payable and addressed to Pitman Learning Center, 530 University Avenue, Palo Alto, California ("SSC & B check"). Evidence of non-receipt was also based on the stipulation; if called to testify, a division controller for the Pitman Learning Center would testify that he reviewed the business records and "determined that a check expected in the mail from SSC & B, Inc., in the amount of $8,457.50 in September, 1981, was never received nor deposited and that SSC & B, Inc., sent a replacement check in December, 1981, after the first check was reported lost."

Graves' connection with the two checks was based primarily on the testimony of handwriting experts and evidence of alteration and negotiation of the stolen checks. As to the SSC & B check, the name of the payee was visibly altered to read "Theresa Gentile," and the face amount was altered from $508.07 to $8,508.07. On September 24, 1981, the SSC & B check was deposited, together with a deposit slip, in an account in the name of "Theresa Gentile" at a Lincoln Savings Bank branch in New York City. Handwriting experts identified the handwriting on the deposit slip as that of Graves. This identification testimony was corroborated by Beatrice Smith, a friend of Graves, who recognized Graves' handwriting on the deposit slip.

The name of the payee on the Mountain Bell check was altered to read "Rita Holt Summers," and on August 27, 1981, the altered check was deposited, together with a deposit slip, into the account of Rita Holt Summers at a Chemical Bank branch in Queens, New York. The handwriting experts testified that the handwriting on the deposit slip and the Mountain Bell check was Graves'. Beatrice Smith gave similar identification testimony.

The evidence also included a tape-recorded telephone conversation between Graves and Beatrice Smith, three weeks before the trial, in which Graves encouraged Smith to perjure herself at trial.

### Discussion

To establish a violation of 18 U.S.C. § 1708 (1982) the Government must prove that the checks were stolen from the mail and that the defendant possessed or received them knowing that they had been stolen. *United States v. Hines*, 256 F.2d 561, 563 (2d Cir.1958). The Government does not have to prove that the defendant knew the checks were stolen from the mail. *Barnes v. United States*, 412 U.S. 837, 847, 93 S.Ct. 2357, 2363, 37 L.Ed.2d 380 (1973).

Direct evidence of theft from the mail is rarely available. Here the Government used a stipulation based on business record entries showing mailing and non-receipt in order to rely on the usual inference that "a letter properly mailed and never received by the addressee, but found in quite improper and misusing hands, can be found to have been stolen from the mails in the absence of any other explanation being proferred." *United States v. Hines*, *supra*, 256 F.2d at 564; *accord United States v. Lopez*, 457 F.2d 396, 398 (2d Cir.), *cert. denied*, 409 U.S. 866, 93 S.Ct. 162, 34 L.Ed.2d 114 (1972).

Graves contends, however, that in light of our recent decision in *United States v. Roglieri*, 700 F.2d 883 (2d Cir.1983), an inference of theft from the mail cannot rest solely on proof of mailing and non-receipt when the recipient is a large commercial firm. Graves argues that while such an inference is proper when evidence of non-receipt is based on the personal recollections of non-commercial addressees, *see, e.g., United States v. Hall*, 632 F.2d 500 (5th Cir.1980); *United States v. Lopez, su-*

*pra,* the absence of an entry indicating receipt in the business records of a large commercial firm is insufficient to prove non-receipt for purposes of the inference.[1] In essence, he maintains that evidence tending to show that the corporate employee who normally logs incoming mail did not make an entry is insufficient for the jury reasonably to rule out the possibility of theft after the matter leaves the mail, *i.e.,* theft somewhere in the sequence from the time some corporate employee receives the mail until the mail moves internally to the employee who records receipt in business records. *See United States v. Dawson,* 608 F.2d 1038, 1040 (5th Cir.1979) ("[B]ecause the evidence did not show that mail is logged in immediately upon receipt from the mail carrier, non-logging cannot be equated with nonreceipt."). The evidence in this case, at best, he adds, suggests only that he participated in a national stolen check cashing operation, a crime that is not within the purview of a statute designed solely to protect against theft from the mail.

In *United States v. Roglieri, supra,* a majority of the panel said it was "reluctant to go beyond existing precedent and hold that evidence of routine business practice alone proves beyond a reasonable doubt that a particular item was stolen from the mail where large commercial firms are involved at each end of a transaction." *Id.* at 886. The Court stated:

> Where firms are involved at both ends of a transaction ... and evidence of routine practice alone is available, the hands of numerous unidentified persons in accounting offices, mail rooms and messenger services are usually involved and many opportunities for theft exist at various stages in transit other than while in the mail, thus reducing greatly the prob-

ability that the actual theft was from the mail. *Id.* (citation omitted).

The reluctance expressed in *Roglieri,* however, did not lead to a holding, for the Court did not decide whether an inference of theft from the mail can rest solely on proof of mailing and non-receipt when the recipient is a large commercial firm. Instead, the Court held that there was other evidence sufficient to prove that the checks were stolen from the mail. The two checks negotiated by the defendant had been sent from different locations to boxes in the same postal station. Evidence of "a common location while in the mail" was deemed "sufficient particularized evidence to support a finding that the checks in question were stolen while in the mail." *Id.* at 887.

Here, as in *Roglieri,* it is not necessary to decide whether an inference of theft from the mail can rest solely on evidence of routine practice to prove both mailing and non-receipt when the sender and the recipient are large commercial firms. It was stipulated in the instant case that the records of Mountain Bell and SSC & B indicated that the checks had been placed in the mail,[2] and other circumstances provide a substantial basis for inferring theft from the mails rather than theft within the recipient firms. The SSC & B check, which was mailed from New York City to a firm in Palo Alto, California, was deposited in a New York City account with a deposit slip in Graves' handwriting. The deposit in New York City adequately reinforced the inference that the check was stolen after being placed in the mails in New York City and long before it reached its intended destination in California. *See United States v. Rhodes,* 713 F.2d 463, 474–75 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 535, 78 L.Ed.2d 715 (1983). The inference was

1. We reject the Government's argument that by agreeing to the facts in the stipulation, Graves conceded that the checks were never received. The stipulation can prove no more than the underlying stipulated facts would show—receipt of the two checks was never recorded in the addressees' business records. The issue here is whether the jury reasonably could have inferred from the facts agreed to in the stipulation and

other evidence submitted at trial that the checks were stolen from the mail.

2. Graves does not argue that a business record entry of a large commercial firm showing mailing is insufficient for purposes of the mailing aspect of the *Hines* inference.

further strengthened by the fact that the other stolen check was sent *to* an addressee in New York City. Though it is theoretically possible that both checks were stolen at opposite ends of the country after their movement through the mail and then, through a stolen check ring, became available to Graves for cashing, that possibility is sufficiently minimized by the highly suspicious circumstance that both checks, one mailed from New York City and the other mailed to New York City, were deposited, after forged endorsements, in New York City. The evidence permitted the jury to infer theft from the mail. The Government is under "no duty to negate all possible innocent inferences from a set of circumstantial facts where, as here, the jury could have properly inferred [theft from the mails] from those same facts." *United States v. Singleton*, 532 F.2d 199, 203 (2d Cir.1976) (citations omitted).

The evidence also sufficed to prove that Graves had possession of both checks and knew they were stolen. His handwriting was on the deposit slips that accompanied the deposit of both checks, and both slips were in the altered names of the payees.

Graves' remaining claims are also without merit. Graves' uncounseled post-indictment statement to Beatrice Smith, who was not acting at the Government's request, was properly received into evidence in the absence of objection or a motion to suppress. Moreover, neither the failure to make such objection or motion nor the other complaints now raised about Graves' trial counsel indicate a lack of the effective assistance of counsel. *See Trapnell v. United States*, 725 F.2d 149 (2d Cir.1983). Counsel is not required to file a suppression motion in every case, *United States v. Aulet*, 618 F.2d 182, 187 (2d Cir. 1980), and counsel was entitled to conclude that he had an insufficient basis to claim that Smith was an agent of the Government at the time Graves spoke with her. *See United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). Finally, Graves' claim of improper and prejudicial joinder of the two counts is not only

frivolous, *see United States v. Werner*, 620 F.2d 922 (2d Cir.1980), but the claim has been waived for failure to make a severance motion before or during trial. *United States v. Beltempo*, 675 F.2d 472, 481 (2d Cir.), *cert. denied*, 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1353 (1982).

Accordingly, the judgment of conviction is affirmed.