UNITED STATES of America,
Plaintiff-Appellee,

v.

Clay DAVIS and Charles Edward Fralix,
Defendants-Appellants.

No. 71-2153.

United States Court of Appeals,
Fifth Circuit.

June 2, 1972.

Rehearing Denied June 23, 1972.

Bobby D. Myers, A. L. Hernden, Alan Brown, San Antonio, Tex., for defendants-appellants.

Seagal V. Wheatley, U. S. Atty., Reese L. Harrison, Jr., Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, GOLDBERG and CLARK, Circuit Judges.

GOLDBERG, Circuit Judge:

This is an appeal arising from convictions under the federal mail theft statutes. Though we are living in an age of optical scanning, zip codes, and automation, far removed mechanically from the stagecoach era when postmistresses hand delivered the mail to the inhabitants convened by the rumbling noise of the approaching coach, the principal issues on this appeal involve the construction of statutes dealing with postal thefts whose inception derives from those personalized rather than anonymous ways of life. The other issues are of our daily judicial menu, spiked here and there with a few nonessential condiments.

Appellants, Clay Davis and Charles Edward Fralix, were convicted by a jury of conspiring to possess money orders which had been stolen from an authorized depository for mail matter, in violation of 18 U.S.C.A. §§ 371 and 1708. Appellant Clay Davis was also convicted for unlawful possession of the contents of a letter which had been stolen from the mail, knowing the same to have been stolen, in violation of 18 U.S.C.A. § 1708. The proof showed that one hundred consecutively numbered money orders from the Consumers Money Order Corporation of America were mailed to Everett's Food Store located at 918 Nolan Street in San Antonio, Texas. While the letter containing the money orders was properly addressed, the postal service delivered it to a pharmacy located at 900 Nolan Street in San Antonio and operated by one Paul Diamond. Since there is no letter box at the Diamond Pharmacy, the postman routinely places all of the pharmacy's mail on the front counter inside the store. The mail is then customarily taken to Mr. Diamond's desk at the rear of the pharmacy. During the particular day on which the money orders were misdelivered to the pharmacy, Mr. Diamond was routinely opening his mail when he came across the letter containing the money orders. Thinking the letter was his Master Charge statement, he opened it, discovered the one hundred money or-

ders, and then saw that the envelope was addressed to Everett's Food Store. However, instead of delivering the money orders to the addressee, Diamond turned them over to a former pharmacy employee, one Sam Ball, and instructed him to cash them. Eventually, several of the stolen money orders came into the possession of the appellants, and both Davis and Fralix, along with other conspirators, cashed some of the money orders, knowing them to have been stolen.

The appellants challenge their respective convictions on a number of grounds. They allege (1) that the district court incorrectly admitted into evidence a hearsay statement of the owner of Everett's Food Store; (2) that the Government failed to prove that the money orders which were admitted into evidence at the trial had ever been in the mails; (3) that the trial court erred in refusing to permit the appellant Davis to show an alleged custom and practice of the United States Attorney's office of moving to dismiss the remaining counts of an indictment upon sentencing when a co-defendant has entered a plea of guilty to one of the counts of the indictment; (4) that the trial court incorrectly defined the term "mail" to include postal matter which has been misdelivered to the wrong address; and (5) that there was no evidence tending to show that the money orders were stolen from an authorized depository as alleged in the conspiracy count of the indictment. Finding ourselves in agreement with the appellants' last contention, we reverse their convictions on the conspiracy count. However, we affirm Clay Davis' conviction on the substantive count.

■ In their first two contentions Davis and Fralix attack the Government's proof that the money orders which the appellants and their co-conspirators cashed were placed in the custody or possession of the United States Postal Service. The appellants assert not only that the proof as to the mailing of the money orders is wholly insufficient, but also that what little evidence there is concerning the act of mailing is inadmissible hearsay and should never have been placed before the jury. The evidence which the appellants assert is inadmissible is contained in a written statement signed by Alex Alcocer, the owner of Everett's Food Store, prepared under the direction and for the benefit of Consumers Money Order Corporation, and introduced into evidence as an exhibit by the Government. This document was essentially a certification by Alcocer that Everett's Food Store did not receive, through the mails or otherwise, a certain lot of Consumers Money Orders. However, Alcocer also certifies in the document that the money orders which the food store was scheduled to receive were actually mailed by Consumers to the store. Of course, it was brought out at the trial that Alcocer possessed no personal knowledge as to the actual mailing of the money orders, and, therefore, Clay and Fralix objected to the admission of the document on the basis that Alcocer's statement regarding the actual mailing of the money orders was inadmissible hearsay. The trial court overruled the objection and the appellants argue that this overruling constitutes reversible error. While we agree that this exhibit should not have been admitted into evidence because it contains a hearsay statement, we nevertheless are convinced that the error was harmless as to both of the appellants. We first note that Alcocer, upon cross-examination by defense counsel, refuted the hearsay statement when he testified that he did not possess any personal knowledge that the money orders were placed in the mails by the Consumers Money Order Corporation. Indeed, he testified that he knew only that during the first or second week in July, 1970, the store was scheduled to receive one hundred money orders, but that they never arrived. More importantly, however, we think that placing the hearsay statement before the jury was harmless in light of the abundance of admissible evidence tending to show that the money orders which the appellants cashed were actually placed in the custody and pos-

session of the Postal Service. That evidence, coupled with decisional authority, not only convinces us that the admission of hearsay was harmless, but it also refutes the appellants' second contention that proof of mailing was insufficient as a matter of law.

The record in this case reveals that a representative of Consumers testified that during the first week of July, 1970, a certain series of money orders was issued to Everett's Food Store. That representative also testified that the ordinary routine at Consumers was to mail the money orders to the agents. Finally, the representative stated that the business records of Consumers reflect that the money orders were issued and mailed to Everett's. In addition to this testimony, Mr. Alcocer, as noted above, testified that although the store was scheduled to receive a series of money orders from Consumers early in July, they never arrived. Under decisions of this court, we think the above evidence, standing alone, would have been sufficient to carry the issue to the jury and to support a jury finding that the money orders were actually mailed. See, e. g., Smith v. United States, 5 Cir. 1965, 343 F.2d 539. However, in addition to the above circumstantial evidence, the Government introduced direct evidence to the effect that Consumers Money Orders addressed to Everett's Food Store were sent through the mails during the first or second week of July, 1970. Mr. Paul Diamond, who was a witness for both the prosecution and the defense, testified that on or about July 7, 1970, he received in the mail a letter containing a large number of Consumers Money Orders and that the letter was addressed to Everett's Food Store. Furthermore, a former employee, Sam Ball, corroborated Diamond's testimony by stating that when he received the money orders from Diamond, they were in a stamped envelope addressed to Everett's Food Store. In the face of this direct and positive testimony, we conclude that evidence of mailing was not only sufficient to carry the case to the jury, but was of such character as to render harmless the trial court's error of admitting into evidence the hearsay statement of Mr. Alcocer.

■ We next focus our attention on another of the asserted evidentiary errors of the district judge. Appellant Davis contends that the lower court should have permitted the defense to introduce into evidence an alleged custom and practice of the United States Attorney's office of moving to dismiss the remaining counts of an indictment upon sentencing when a co-defendant has entered a plea of guilty to one of the counts of the indictment. As Davis correctly notes, two co-defendants testified for the Government, and each of these co-defendants pleaded guilty to one count in the indictment and not guilty to the remaining counts. Davis asserts that he should have been allowed to reveal the aforementioned custom and practice of the United States Attorney's office for the purpose of showing bias on the part of these witnesses. As we understand his argument, Davis does not contend that there existed an agreement between the testifying co-defendants and the Government, whereby in exchange for testimony favorable to the prosecution and a guilty plea on at least one count of the indictment the United States Attorney's office was to dismiss those counts of the indictment to which the co-defendants had plead not guilty. Rather, it is appellant Davis' position that the admission of the alleged custom and practice would have brought to the attention of the jury the possibility that the co-defendants gave testimony favorable to the Government's position in expectation that the United States Attorney's office would follow its alleged custom and practice and would dismiss those counts of the indictment to which the co-defendants had not plead guilty. Without discussing the general propriety of admitting or excluding such evidence, we think that in the instant case appellant Davis has failed to show that he was prejudiced in any way by the district court's exclusion of the alleged cus-

tom and practice. Upon cross-examination of each of the co-defendants who testified for the Government, appellants' counsel brought out the fact that the witness had plead guilty to one count of the indictment and not guilty to the remaining counts. Furthermore, appellant Fralix's counsel inquired of one co-defendant of the possibility that the Government might dismiss those counts of the indictment to which the co-defendant had plead not guilty. While the witness responded that there was no agreement for the Government to dismiss the remaining counts of the indictment or to request a lighter sentence in exchange for the witness' testimony, the colloquy between the co-defendant and counsel was such as to bring to the attention of the jury the possibility that the two testifying co-defendants were influenced in their testimony by expectations of prosecutory leniency. Thus, the appellant, by means of cross-examination of the co-defendants, succeeded in placing before the jury the very inference that was sought to be engendered by the admission of evidence relating to the alleged custom and practice of the United States Attorney's office. Accordingly, we cannot conclude that either of the appellants was prejudiced in any manner because appellant Davis was not permitted to show the possible Government bias of the co-defendants by means of indirect or cumulative evidence concerning the alleged custom and practice.

In a third contention, appellant Davis argues that the trial court incorrectly defined the term "mail." As noted above, Davis was convicted under a substantive count which alleged that on a certain date in 1970, Davis, along with several co-conspirators, had in his possession the contents of a letter which had been stolen from the *mail*, knowing the same to have been stolen. Section 1708 of 18 U.S.C.A. provides as follows:

"Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or

Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or

Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

Shall be fined not more than $2,000 or imprisoned not more than five years, or both."

In defining the term "mail" for the jury the trial judge stated that any mail matter or material remains in the custody of the Postal Service until it is delivered to the addressee at the proper address. Appellant Davis contends that this definition is far too expansive, and that under decisional authority of this court and other circuits Davis' involvement in any misadventure involving Consumers Money Orders did not constitute an offense interdicted by section 1708. We disagree, and accordingly approve the district judge's above definition of the word "mail."

We note that this is not the first occasion on which this court has had to interpret the federal mail theft statutes, particularly section 1708. Indeed, in Smith v. United States, *supra*, a defendant who had been convicted under section 1708 for possession of stolen mail

contended that the stolen social security checks were not taken from a custody or locus within the purview of section 1708. Before specifically rejecting that contention this court, speaking through Judge Wisdom, enunciated a realistic judicial interpretation of the federal mail theft statutes:

> "We deal in this case with substantive federal crimes of great antiquity. Originally the prevention of these crimes served the needs of a postal system, the most serious problems of which were the depredations of highwaymen. The anonymity of the modern postal system creates new problems of proof. Congress has helped in some respects with wise amendments of the statutes; judicial appraisal of the realities of delivering and receiving mail in a modern urban environment must do the rest."

343 F.2d at 542. [Footnotes omitted]. Under our "appraisal of the realities," we think it is certainly reasonable that any person sending mail matter through the United States postal system would expect the postal authorities to accept as their duty the delivery of packages and letters to the address contained thereon. Moreover, we note that the sheer volume of mail and the number of persons required to collect, transport, and deliver postal matter has not only increased the statistical chance of misdelivery through human error, but has also fostered an anonymity between today's mail carriers and addressees that was not characteristic of the relationship between postriders and our founding fathers. In essence, when a letter is misdelivered the United States Postal Service has no effective means of delivering that piece of mail into the hands of the addressee except by relying upon the honesty and forthrightness of the individual who received the misdelivered matter. Given an overall Congressional purpose of ex-tending a wide range of protection to the mails,[1] we conclude that under section 1708, postal matter remains in the custody or locus of the postal system, and continues to be "mail," until such time as the material is returned to the sender or delivered to the address specified by the sender.

In taking exception to this definition of the term "mail," appellant Davis places principal reliance upon our decisions in Allen v. United States, 5 Cir. 1968, 387 F.2d 641, and Goodman v. United States, 5 Cir. 1965, 341 F.2d 272. In the *Allen* case a welfare check was mailed to a James Jackson at 1734 Walnut Street, Jacksonville, Florida. James Jackson lived at 1739 Walnut Street, but the mail was delivered to 1734 where Allen resided. We reversed Allen's conviction under 18 U.S.C.A. § 1708, because of the failure of the Government to prove that there was any intent on the part of the defendant, Allen, to steal the welfare check at the time he removed it from his mailbox. Our decision in Goodman v. United States, supra, is identical to our holding in *Allen,* as the Government there did not prove that Goodman removed a check from his own post office box with an intent to steal it. In both the *Goodman* and *Allen* cases the Government proved only that the intent to steal was formed after the check had been removed from a mailbox. Similarly, in the case *sub judice* the Government's proof showed that the intent to steal the money orders was formed by Mr. Diamond after he opened the letter at his desk in the back of the pharmacy. Nevertheless, we conclude that our decisions in *Goodman* and in *Allen* in no way detract from our present statutory interpretation of the term "mail." In both *Goodman* and *Allen* the letters containing the checks had not been misdelivered. Rather, the Postal Service had properly delivered those letters to the

---

1. The range of offenses involving the United States mails clearly demonstrates Congressional concern in this area, *see, e. g.,* 18 U.S.C.A. § 1698 (prompt delivery of mail from vessel), § 1700 (desertion of mails), § 1706 (injury to mail bags), § 1716 (injurious articles as nonmailable), and § 1728 (weight of mail increased fraudulently).

addresses contained thereon, but the addresses themselves were incorrect. In the instant case the letter containing the money orders had not been improperly addressed—it had been improperly delivered. In the context of section 1708, we think that the duty and authority of the Postal Service over mail placed in its custody ceases to exist once a letter is delivered to the address which the sender has specified and is lawfully removed from a letter box or other mail receptacle. However, when a letter or package has been misdelivered, i. e., not delivered to the address contained thereon, we believe that the duty of the Postal Service, accompanied with a concomitant authority, over that piece of mail continues to exist while the mail matter remains in the possession of the person who has received the misdelivery. Thus, in the latter situation, which clearly encompasses the instant case, it is our opinion that the misdelivered letter continues in the custody of the postal service, and therefore remains in the "mail," until it has been returned to the sender or delivered to its addressee.

In further support of his contention appellant Davis argues that the scope of conduct proscribed by another mail theft statute demonstrates the error in this court's definition of the term "mail" under section 1708. Section 1702 of 18 U. S.C.A. provides:

"Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined not more than $2,000 or imprisoned not more than five years, or both."

As Davis correctly notes, this statute punishes theft of mail "before it has been delivered to the person to whom it was directed." Davis contends that in comparison with section 1702, section 1708 prohibits the theft of mail from any locus which is under the direct or indirect control of the Postal Service. Thus, section 1708 punishes the theft of mail from, for example, a postal station, a postman, or a letter box. Appellant Davis further argues that unlike section 1708, section 1702 reaches out to protect the movement of postal matter after it has left a section 1708 locus and until it is delivered to the person to whom it was directed. This analysis, Davis reasons, evinces a clear Congressional intent that section 1702 was designed and intended to punish interference with postal matter after it has left the custody of the postal service but before it has been delivered to the addressee. Given this Congressional intent and the further fact that Mr. Diamond's misappropriation of Consumers Money Orders in this case falls within the ambit of section 1702, Davis argues that the offense herein committed by either of the appellants or any of the other conspirators falls outside the scope of section 1708. We are unable to accept this argument, for we fail to find any clear delineation between the offenses prohibited by section 1708 and those interdicted under section 1702. These sections overlap to a great extent, and in the face of this duplication we cannot perceive a clear Congressional intention to carve out of each section an unalterable sphere of mail theft activity. Indeed, the nearly coterminous activity proscribed by these two sections leads us to conclude that "[s]ection 5469 [section 1708] is concerned more especially with thefts and embezzlements from the mails for purposes of gain. Section 3892 [1702] deals with unauthorized meddling with the mails for the purpose of gratifying mere malice or a prying curiosity. The intent or purpose which constitutes the

gist of the offense is one thing in one of the sections, and quite a different thing in the other." United States v. Davis, D.C.Mich.1888, 33 F. 865, 867; *accord,* United States v. Grieco, S.D.N.Y.1960, 187 F.Supp. 597. Given this distinction, we are unable to conclude that Congress intended that the provisions of section 1708 should not reach out and protect misdelivered mail from theft and embezzlement merely because it has left the confines of an improper mail receptacle. Absent Congressional intent, we are extremely reluctant to hold that our Postal Service, in its ceaseless quest for efficiency through modernization of its services, must be fenced in by an intractable definition of the term "mail." We do not deny that "mail" can have termini; we simply insist that like the universe we have not seen or touched it all. Who knows but that some day our astronauts will deliver the "mail" with a methodology that defies even science-fiction writers of today. We reject appellant Davis' assault upon the propriety of his conviction under the substantive count, and we specifically hold that the district judge did not err in defining the term "mail" to include misdelivered postal matter.

■■ We next turn our attention to appellants' principal complaint concern-ing the conspiracy count which charged that the appellants "and diverse other persons did conspire, confederate, and agree together and with each other to possess Consumers Money Orders which had been the contents of a letter and which had been stolen . . . out of an authorized depository for mail matter, knowing the same to have been stolen. . . ." [2] As noted earlier, section 1708 of 18 U.S.C.A. proscribes the possession of mail matter which has been stolen "from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, . . ." However, as the appellants allege, the Government failed to offer any evidence tending to show that the letter containing the 100 money orders was stolen from or out of an authorized depository for mail matter. The Government's proof was that the postman left the letter containing the money orders on the front counter at Diamond's pharmacy, and that the mail was routinely transferred to Diamond's desk at the back of the store, where it was opened. Even assuming, as the Government urges, that the pharmacy's front counter constitutes an authorized depository for mail matter within the meaning of section 1708.[3]

---

2. In addition to asserting that the evidence on the conspiracy count is at variance with the allegations contained in the indictment, the appellants also contend that the Government failed either to allege or to prove that the appellants cashed the money orders in furtherance of the conspiracy with knowledge that the money orders were stolen from an authorized depository for mail matter. Thus, the appellants assert that under the conspiracy count the Government cannot simply prove that the appellant knew the money orders were stolen, but must also show that the appellants knew the money orders were stolen from an authorized depository. Because we conclude that the Government failed to show that the money orders were taken from an authorized depository, we find it unnecessary to reach the merits of this additional allegation.

3. The Government's contention that the pharmacy's front counter is an "authorized depository for mail matter" is based on the following Post Office Department Regulation:

"Obligation of Patron. Customers of the carrier delivery service must provide mail receptacles or door slots. Business houses are not required to provide mail receptacles or door slots if they are open and someone is on hand to receive the mail when the carrier calls. Where an office building is equipped with an elevator, carriers will deliver to individual offices, provided they are open when the carrier arrives. If they will not be open, mail receptacles or door slots must be provided."

39 C.F.R. § 155.4(a). It is obvious that this regulation requires a customer to

there is nevertheless absolutely no evidence showing that Diamond took the mail *from the counter* with an intent to steal the money orders. The best that can be said for the Government's case is that Diamond formed his intent to steal the money orders after he had opened the letter by mistake at his desk in the back of the pharmacy. While our previous discussion indicates that Diamond and his co-conspirators may very well have violated section 1708 by taking these money orders from the "mail," we cannot conclude that anyone, including the appellants, violated this section in the manner charged in the indictment— a taking from an authorized depository for mail matter. The Government, in pressing for affirmance of the appellants' convictions on the conspiracy count, does not explain why this case is not governed by the long-standing rule that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." Stirone v. United States, 1960, 361 U.S. 212, 216, 80 S.Ct. 270, 273, 4 L.Ed.2d 252, 256. Since the Government chose to charge a section 1708 violation in a particular manner, we hold that in any conviction pursuant to that indictment the prosecution is bound by the particular allegations contained therein and it cannot obtain a conviction by proof of a violation of the same statute in a manner not alleged. *Cf.* Jeffers v. United States, 9 Cir. 1968, 392 F.2d 749. Finding a deficiency of proof as to the alleged conspiracy, we reverse the appellants' convictions on the conspiracy count.

Affirmed in part and reversed in part.

have a mail receptacle or door slot except in the case of a business office which is open and has someone present to receive the mail when the carrier arrives. Because Diamond's pharmacy qualified as such a business office, it is the Government's position that the above regulation expressly "authorized" the use of the pharmacy's front counter as a mail receptacle within the ambit of 18 U.S.C.A. § 1708.