**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James ANTON, Defendant-Appellant.**

No. 76–2566.

United States Court of Appeals,
Ninth Circuit.

Dec. 28, 1976.

Clifford Tedmon, Asst. Federal Defender, Sacramento, Cal., for defendant-appellant.

Thomas Couris, Asst. U. S. Atty., Fresno, Cal., for plaintiff-appellee.

Before BROWNING and SNEED, Circuit Judges, and BURNS,* District Judge.

SNEED, Circuit Judge:

James Anton was convicted of possession of stolen mail matter in violation of 18 U.S.C. § 1708. On appeal, he challenges the trial court's denial of his motion for acquittal, arguing that the Government failed to prove a theft from the mail and that there was a fatal variance between the indictment and the proof.

On December 11, 1974, Slakey Brothers issued and mailed a check in the amount of $95,410.13 to the Brumley-Donaldson Company. The envelope in which they mailed the check, although properly addressed, was inadvertently delivered to the post office box of Luis Martinez, which was adjacent to that of Brumley-Donaldson. Juan Carlos Soto picked up the mail for Martinez, who did not discover the misdelivered letter until he opened all the mail later that day. Soto and Martinez initially intended to locate the true owners and to return the check. They subsequently changed their minds, however, and decided to negotiate the check for themselves.

They enlisted appellant to assist in their scheme. He succeeded in exchanging the stolen check for a cashier's check, but was unable to cash the cashier's check.

Appellant contends that because the intent to steal the check did not arise until after Soto lawfully removed the letter from the post office box, the check was not in the mail when the theft occurred. In any

---

* Honorable James M. Burns, United States District Judge, District of Oregon, sitting by designation.

event, he argues, a fatal variance exists in that the Government produced no evidence to show that the check was stolen from an "authorized depository" as alleged in the indictment. For reasons hereafter stated, we disagree with appellant and affirm the trial court.

## I.

Appellant asserts that postal matter which has been lawfully removed from a post office box is no longer in the mail and that consequently section 1708 does not apply. He relies upon this court's dicta in *United States v. Birnstihl*, 441 F.2d 368 (9th Cir. 1971) which states: "If the mail had already been received by the addressee, or if it were misdelivered to one who did not form the intent to steal it until after he had lawfully removed the mail from its receptacle, there is no violation of section 1708." *Id.* at 369. Appellant has drawn this seemingly favorable language out of context. The court made this statement in a discussion of the various types of proof that will rebut the inference that one possessing a recently mailed and properly addressed item which was never received by the addressee stole the item. It does not necessarily follow that a misdelivered letter lawfully removed from a post office box cannot under any circumstances be stolen from the mail in violation of section 1708. A further indication of the court's intent is the fact that neither of the two decisions which the court cited in this context, *Allen v. United States*, 387 F.2d 641 (5th Cir. 1968) and *Goodman v. United States*, 341 F.2d 272 (5th Cir. 1965) involved *misdelivered* letters; both dealt with *improperly addressed* letters.[1]

The distinction between improperly addressed mail and misdelivered mail is cru-cial. In this respect, we adopt the reasoning of the Fifth Circuit in *United States v. Davis*, 461 F.2d 83 (5th Cir. 1972). Once an item is delivered to the address indicated by the sender and lawfully received at that address, the item ceases to be in the mail and the protection which section 1708 provides terminates.[2] On the other hand, when the postal authorities misdelivered postal matter, this postal matter does not cease to be "mail" at the instant of its lawful removal from an authorized depository.

To categorize misdelivered mail with improperly addressed mail would effectively foreclose the application of section 1708 to the former. The situations in which one would have the requisite intent to steal at the moment he withdraws his mail from its receptacle are few. In the normal case, which this case typifies, only after the removal does the intent arise and the theft occur.

It is not an illogical distinction that we draw. The Postal Service has a duty to deliver postal matter to the address indicated by the sender. When it satisfies this obligation and the material is received at that address, its concomitant authority over the mail ends. Conversely, when the Postal Service misdelivers an item, thus breaching its duty, its authority over the item continues after the item is received. *See United States v. Davis, supra.*

We do not, however, embrace the entirety of the *Davis* holding in this regard. In some cases, the authority of the Postal Service may expire before "the material is returned to the sender or delivered to the address specified by the sender." *United States v. Davis*, 461 F.2d at 88. The authority of the Postal Service does not have an infinite reach.[3] Consequently, we hesi-

---

1. The Fifth Circuit emphasized this fact in *United States v. Davis*, 461 F.2d 83 (5th Cir. 1972).

2. This does not include, of course, the situation where postal matter is sent to the former address of an addressee who has filed a proper notice of a change of address. *See United States v. Birnstihl*, 441 F.2d 368 (9th Cir. 1971).

3. The history of a misdelivered letter may sometimes be extensive and unforeseeable. The overly rigid *Davis* rule would extend the concept of "in the mail" and the reach of section 1708 to cover some fact situations in which any connection with the mail is attenuated at best.

tate to espouse this broad concept of "in the mail" and only hold that *under the circumstances of the case before us*, the check was still "in the mail" when Soto and Martinez decided to embark upon their misadventure. Fixing the outer limits of an "in the mail" doctrine is not necessary to dispose of this case.

## II.

Rule 52(a), Fed.R.Crim.P. provides:

> "(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

A variance does not affect the substantial rights of the accused if (1) the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or unfairly surprised at trial and (2) if the variance is not such that it will deprive the defendant of his protection from reprosecution for the same offense. *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *Heisler v. United States*, 394 F.2d 692, 694 (9th Cir. 1968); *Arnold v. United States*, 336 F.2d 347, 352 (9th Cir. 1964).

The indictment charged appellant with possession of "stolen mail matter which had been stolen, taken and abstracted from an authorized depository for mail matter . . . ." The only issue litigated below, however, was whether appellant knew the check was stolen; neither party attached any significance to the fact that the check was not stolen from an authorized depository. In fact, both parties assumed that Martinez and Soto had stolen the check from the mail.[4] In view of these circumstances, we hold that the variance in no way misled appellant nor hindered the preparation of his case. Furthermore, we conclude that the indictment is sufficient to protect appellant against double jeopardy. *See Arnold v. United States, supra* ; Comment, *Twice in Jeopardy*, 75 Yale L.J. 262 (1965).

The judgment of the trial court is AFFIRMED.

---

**4.** The trial judge, after jury argument, first raised the question of whether the check was in the mail when Martinez and Soto decided to steal it.