**UNITED STATES of America**

v.

**John LAVIN, Appellant.**

**No. 77–1488.**

United States Court of Appeals, Third Circuit.

Argued Oct. 18, 1977.

Decided Dec. 5, 1977.

. A. Charles Peruto, Burton A. Rose, Peruto, Ryan & Vitullo, Philadelphia, Pa., for appellant.

David W. Marston, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section, Edward S. G. Dennis, Jr., Asst. U. S. Atty., Philadelphia, Pa., for appellee.

## OPINION OF THE COURT

Before ROSENN and VAN DUSEN, Circuit Judges, and COHILL, District Judge.*

ROSENN, Circuit Judge.

The United States Postal Service has served as the keystone of the American communications system since its founding by Benjamin Franklin in 1775.[1] In recognition of the indispensable role the Postal Service plays in the private and commercial life of the nation, Congress has provided criminal penalties for activities that interfere with the Postal Service's mandate to deliver the mail.[2] The defendant in this case, John Lavin, was found guilty by a jury in the United States District Court for the Eastern District of Pennsylvania of obstruction of the mails[3] and possession of stolen mail matter.[4] On appeal, the defendant seeks to overturn his conviction primarily on the ground that the evidence adduced at trial was legally insufficient to prove that he stole from the mails.[5] This appeal

---

*  Maurice B. Cohill, Jr., United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. In 1970, the Postal Service handled 84,800,-000,000 pieces of mail. Projections indicate that the volume will increase by 1981 to 120,-000,000,000 pieces of mail annually. 14 Encyclopedia Brittanica 887–88 (1977).

2. 18 U.S.C. § 1691 et seq. (1970). Among the prohibited activities that interfere with the mails are destruction of letter boxes (§ 1705), theft of newspapers (§ 1710), and fraudulently increasing the weight of the mail (§ 1728).

3. 18 U.S.C. § 1701 (1970). The statute reads:
   Whoever knowingly and willfully obstructs or retards the passage of the mail, or any carrier or conveyance carrying the mail, shall be fined not more than $100 or imprisoned not more than six months, or both.

4. 18 U.S.C. § 1708 (1970). The statute reads, in pertinent part:
   Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, . . . or mail, or abstracts or removes from any such letter, . . . or mail, any article or thing contained there-

in, or secretes, embezzles, or destroys any such letter, . . . or mail, or any article or thing contained therein . . . .
   Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

5. The defendant also seeks reversal on the following grounds: (1) the evidence was insufficient to support the verdict; (2) the district court failed to instruct the jury properly concerning expert witness testimony; (3) it was error for the district court to instruct the jury that they should return the same verdict for both counts.
   As to the first two grounds, we have considered appellant's contentions, and we find them without merit. As to the last ground, in some cases, to charge that a person indicted with violations of sections 1701 and 1708 must be either guilty of both or not guilty of both may be an error. It is possible, in fact, to be guilty of violating section 1701 and not guilty of violating the more serious section 1708, for example, by taking letters deposited in the mail and destroying them. United States v. Takacs, 344 F.Supp. 947 (W.D.Okl.1972). Our reading of the record, however, provides no basis to overturn Trial Judge Fullam's well-reasoned conclusion that under the evidence as presented, the jury could not reasonably have found the defendant guilty of one count and not guilty of the other.

raises the question of when in the mail delivery process a misdelivered letter ceases being "mail," thereby no longer enjoying protection under the federal mail theft statutes.

In March 1975, the Fireman's Fund Insurance Company mailed a properly addressed letter, containing a check in payment of an insurance claim, to James Purdy, who lived in an apartment building in Philadelphia. Mr. Purdy did not have a designated mail box, so his mail was often left under the defendant's door, the adjacent apartment. Mr. Purdy never received the check; the jury found that the defendant cashed that check with his forged endorsement.

The defendant contends that, as a legal matter, even if the jury did believe that he converted the check, his actions did not constitute a violation of the federal mail theft statutes, sections 1701 and 1708. We disagree and affirm the conviction.

## I.

■ There is little case law interpreting section 1701, and those cases that do discuss it simply give the words of the statute their ordinary language use meaning. The only difficult element of section 1701 to interpret is determining when mail matter within the "passage of the mail." In *United States v. Takacs*, 344 F.Supp. 947 (W.D. Okl.1972), the court stated:

No case has been found in which the term "passage of the mail" as used in 18 U.S.C. § 1701 has been defined, construed or interpreted. However, long ago in considering a similar Statute employing the same term it was defined to mean the transmission of mail matter from the time the same is deposited in a place designated by law or by the rules of the

post office department *up to the time the same is delivered to the person to whom it is addressed. United States v. Claypool*, 14 F. 127 (W.D.Mo.1882). The Court accepts this early definition of the term "passage of the mail" as being within the intention of Congress in using such language in 18 U.S.C. § 1701 when such Statute was thereafter enacted. (Emphasis supplied.)

*Id.* at 949. Also adopting this definition was the court in *United States v. Fleming*, 479 F.2d 56 (10th Cir. 1973). Although this interpretation of "passage of the mail" is quite comprehensive, we believe that it accurately reflects the responsibility of the Postal Service. We see no reason why this court should diverge from that precedent, and so we adopt it as well.

■ According to the record in this case, the letter in question was properly mailed to James Purdy—"the person to whom [the letter] [was] [properly] addressed"—who never received the letter. Therefore, that letter must be considered within the "passage of the mail." Because evidence adduced at trial placed the check in the defendant's hands, the jury reasonably could have found him guilty of violating section 1701. *See United States v. Hines*, 256 F.2d 561, 564 (2d Cir. 1958).

## II.

In contrast to the infrequent treatment of section 1701, the body of case law discussing section 1708 is ample, and divides into two general factual groups: cases in which the stolen mail was improperly addressed and cases in which the stolen mail was misdelivered. Because the letter in the instant case was properly addressed, only the latter group of cases is relevant to this decision.[6]

---

**6.** Among the notable cases discussing section 1708 in the context of improperly addressed mail are *Allen v. United States*, 387 F.2d 641 (5th Cir. 1968), and *Goodman v. United States*, 341 F.2d 272 (5th Cir. 1965). The distinction between letters that are improperly addressed and those that are misdelivered is significant in the section 1708 context. Realistically, we can expect from the Postal Service no more than to

deliver mail to the address which the sender has specified, at which point its authority over the mail ends. *United States v. Anton*, 547 F.2d 493, 495 (9th Cir. 1976); *United States v. Davis*, 461 F.2d 83, 89 (5th Cir. 1972). When, however, the Postal Service misdelivers a letter or package, thereby breaching its duty, its authority over that material continues. *United States v. Anton, supra, United States v. Davis,*

The defendant contends that mail misdelivered to an adjacent apartment—which is not an authorized receptacle for mail—is not governed by section 1708. In support of that contention, the defendant notes that specific language in 18 U.S.C. § 1702 (1970) (obstruction of correspondence) makes that section applicable to mail at any time "before it has been delivered to the person to whom it was directed" whether or not it was in an authorized receptacle at the time of the theft.[7] Because section 1708 is not so explicit, the defendant argues, its protective breadth is considerably more restricted. *United States v. Ashford,* 530 F.2d 792, 795 (8th Cir. 1976); *United States v. Logwood,* 360 F.2d 905, 908 (7th Cir. 1966).

In *Logwood,* mail for the tenants of an apartment house which had no mail boxes normally was delivered to the landlady. The landlady's son stole mail for the tenants from his mother's apartment. The court held that such a theft did not constitute a violation of section 1708 because the mail was not stolen from an authorized receptacle. In accord with that holding are *United States v. Thomas,* 361 F.Supp. 978 (N.D.Tex.1973), in which a mail parcel delivered to the addressee's front porch was held not within the ambit of section 1708, and *United States v. Askey,* 108 F.Supp. 408 (S.D.Tex.1952), in which theft of a letter dropped through a slot in the addressee's door was held not within the scope of section 1708.

We are not persuaded by the defendant's arguments. First, citation to *Logwood* is not persuasive because it is inapposite to the instant case. In *Logwood,* the mail was not misdelivered; the landlady—unlike the defendant here—acted as an agent to collect her tenants' mail. When the mail was delivered to her, it was constructively delivered to the addressees, at which point the protection of section 1708 rightly ended.

Second, we must agree with the defendant that *Askey* and *Thomas* are good authority to support his contention. But the Government cites good authority to the opposite effect, *United States v. Lopez,* 457 F.2d 396 (2d Cir.), *cert. denied,* 409 U.S. 866, 93 S.Ct. 162, 34 L.Ed.2d 114 (1972). In that case, mail left outside the addressee's door was stolen. Holding that the theft did fall within the protection of section 1708, the court stated, "Congress intended to protect mail left at the addressee's front door as well as letters left in the addressee's mailbox." *Id.* at 399. It would be intellectually ingenuous to attempt a factual reconciliation of these holdings; they are clearly in direct conflict. We conclude, however, that *Lopez* states the better rule, and we do not accept the defendant's contrast between the reach of sections 1702 and 1708.

■ The distinction between sections 1702 and 1708 was drawn in *United States v. Davis,* 33 F. 865 (W.D.Mich.1888), in which the court stated that while section 1708 was concerned with theft and embezzlement for the purposes of gain, section 1702 focused on unauthorized and malicious meddling. Given this shade of difference in the nature of the proscribed activity, it seems injudicious to hold that section 1708 does not have the reach of the very similar section 1702, absent clear congressional intent to that effect. *United States v. Davis,* 461 F.2d 83, 89–90 (5th Cir. 1972). To hold otherwise would undercut the overall congressional purpose to ensure the inviolability of the mails in an ambience upon which a vital part of our commercial, economic, and social life depends. As Judge Wisdom noted in *Smith v. United States,* 343 F.2d 539 (5th Cir. 1965), the federal mail theft statutes must be read in light of "the realities

---

*supra.* The precise extent of that continuing authority is discussed *infra.*

**7.** 18 U.S.C. § 1702 (1970) reads:

Whoever takes any letter . . . out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined not more than $2,000 or imprisoned not more than five years, or both.

of delivering and receiving mail in a modern urban environment." *Id.* at 542. Those realities lead us to conclude that section 1708 reaches theft of mail that is misdelivered, even if that misdelivered mail is not placed in an officially authorized receptacle.

■ The defendant further contends that because no intent to steal was formed before the mail was misdelivered to him, section 1708 does not apply. To support that proposition, the defendant cites language from the Ninth Circuit case of *United States v. Brinstihl*, 441 F.2d 368 (9th Cir. 1971) (per curiam), which stated, "If the mail had already been received by the addressee or if it were misdelivered to one who did not form the intent to steal it until after he had lawfully removed the mail from its receptacle, there is no violation of section 1708." 441 F.2d at 369.

The same argument was advanced again before the Ninth Circuit in *United States v. Anton*, 547 F.2d 493 (9th Cir. 1976). There, Judge Sneed, commenting on the use of the *Birnstihl* dicta, wrote:

> Appellant has drawn this seemingly favorable language out of context. The court made this statement in a discussion of the various types of proof that will rebut the inference that one possessing a recently mailed and properly addressed item which was never received by the addressee stole the item. It does not necessarily follow that a misdelivered letter . . . cannot under any circumstances be stolen from the mail in violation of section 1708.

In *Anton*, a letter containing a check in the amount of $95,410.13, although properly addressed, was inadvertently delivered to the post office box of Luis Martinez which was adjacent to that of the addressee. Martinez did not discover the misdelivered letter until he opened all the mail later that day. Originally, Martinez intended to locate the true owner but later he and an associate decided to negotiate the check for themselves and enlisted the appellant Anton to assist in their scheme. The court affirmed the defendant's conviction under section 1708 holding that postal matter does not cease to be "mail" when it is misdelivered to a post office box at the instant of its lawful removal from an authorized depository. The subsequently formed intent to steal did not relieve the defendant of criminal liability.

The Ninth Circuit in *Anton* specifically refused to embrace the comprehensive *Davis* rule that the authority of the Postal Service continues until the material is returned to the sender or delivered to the proper addressee, *Davis*, 461 F.2d at 88, as this would "extend the concept of 'in the mail' and the reach of section 1708 to cover some fact situations in which any connection with the mail is attenuated at best." *Anton*, 547 F.2d at 495 n.3. Instead, the holding in *Anton* was limited to the facts of the case.

We see no policy reason why a properly addressed and duly mailed letter or package that is misdelivered should not be protected by the broad *Davis* rule. Therefore, we adopt for this circuit the rule that "under section 1708, postal matter remains in the custody or locus of the postal system, and continues to be 'mail,' until such time as the material is returned to the sender or delivered to the address specified by the sender." *Davis*, 461 F.2d at 88.

Accordingly, the judgment of the district court will be affirmed.