**UNITED STATES of America,
Appellee,**

v.

**Isaac COLEMAN, Defendant–
Appellant.**

**No. 98–1581.**

United States Court of Appeals,
Second Circuit.

Argued: Sept. 9, 1999.

Decided: Nov. 3, 1999.

Elizabeth M. Johnson, New York, NY (Goldman & Hafetz, Lawrence S. Goldman, of Counsel), for Defendant–Appellant.

David Greenwald, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, Deborah Landis, Ira M. Feinberg, Assistant United States Attorneys, of Counsel), for Appellee.

Before: FEINBERG, WALKER and CALABRESI, Circuit Judges.

FEINBERG, Circuit Judge:

Defendant Isaac Coleman (Coleman) appeals from a judgment of conviction, following a jury trial, in the United States District Court for the Southern District of New York, Sidney H. Stein, J. The charges against Coleman concerned a series of credit card-related crimes he committed during a period of approximately 10 months following his release from prison on other fraud charges in November 1994. Since he was 15 years old, Coleman has been convicted over a dozen times for crimes such as larceny, forgery, credit card fraud, and passing bad checks, often providing false names or falsifying his background. The victims of Coleman's crimes that led to the present appeal included a woman from whom he sublet an apartment in New York City, a traveling salesman whose briefcase Coleman stole from an airport restroom, the former tenant of an apartment Coleman rented, his first cousin and an ex-girlfriend.

Coleman was convicted on four counts of violating 18 U.S.C. § 1029(a)(5) (credit card fraud), 18 U.S.C. § 1342 (mail fraud), 18 U.S.C. § 1708 (possession of stolen mail), and 18 U.S.C. § 1341 (use of a private interstate mail carrier with intent to defraud). By a summary order filed today, we reject most of Coleman's challenges to his conviction and sentence. We address Coleman's conviction under 18 U.S.C. § 1708 for possession of stolen mail in this separate opinion because he raises an issue of law that this court has not yet decided and concerning which the courts of appeals disagree. For the reasons stated below, we affirm Coleman's conviction for violating 18 U.S.C. § 1708.

## I. Background

Count Three of the indictment charged Coleman with possession of stolen mail in violation of 18 U.S.C. § 1708. The evidence at trial showed that Coleman possessed credit card statements belonging to Teresa Bosch, a prior tenant of his apartment in Kansas City. In or about January 1995, Ms. Bosch had moved out of the apartment and Coleman later moved in. Although Ms. Bosch had directed the Post Office to forward her mail to her new address, a Bank of America Visa credit card statement, postmarked March 2, 1995, was nevertheless delivered to the apartment sometime in March 1995. Coleman kept Ms. Bosch's credit card statement, and it was found a few months later in a box of personal effects that Coleman had shipped to Manhattan.

On appeal, Coleman contends that he did not violate § 1708 because the credit card statement intended for Ms. Bosch had been sent to what was then Coleman's address and placed in his mailbox. Cole-

man further argues that the district court improperly instructed the jury on this count.

## II.  Discussion

### A.  Coleman's conviction under § 1708

We begin with the language of the statute at issue:

> Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or
>
> Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or
>
> Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted —
>
> Shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 1708.  The indictment charged Coleman under the third paragraph of § 1708, alleging that he "unlawfully, willfully, and knowingly received, concealed, and had in his possession" a credit card statement that he knew to have "been stolen, taken, embezzled, and abstracted from the mail."  As already indicated, Coleman argues that the credit card statement was not stolen or taken from the mail, because it was delivered to his own mailbox.

■ The courts of appeals agree that § 1708 covers mail that the Postal Service has accidentally delivered to an address other than the one on the envelope (misdelivered mail).  However, there is a split among the circuits over whether § 1708 extends to mail that is delivered to the address on the envelope but to a person other than the specified recipient (misaddressed mail).  The credit card statement in this case was addressed to Ms. Bosch at her prior address, an apartment then occupied by Coleman, and so falls into the category of misaddressed mail.[1]  The Third and Fifth Circuits have ruled that § 1708 covers misdelivered, but not misaddressed, mail, on the theory that the authority of the Postal Service ends once the letter has been delivered to the address on the envelope.  See *United States v. Lavin*, 567 F.2d 579, 583 (3d Cir.1977); *United States v. Davis*, 461 F.2d 83, 89–90 (5th Cir.1972).  The Ninth Circuit has ruled that § 1708 covers misdelivered mail, but covers misaddressed mail only if a change of address form has been filed with the Postal Service by the intended recipient of the mail.  See *United States v. Anton*, 547 F.2d 493, 495 & n. 2 (9th Cir.1976); *United States v. Birnstihl*, 441 F.2d 368, 369 (9th Cir.1971) (per curiam).  Finally, the Seventh and Tenth Circuits have ruled, and the First Circuit has implicitly concluded, that § 1708 extends to both misdelivered and misaddressed mail.  See *United States v. Palmer*, 864 F.2d 524, 527 (7th Cir. 1988); *United States v. Douglas*, 668 F.2d 459, 461 & n. 3 (10th Cir.1982); see also

---

1.  Misaddressed mail generally takes one of two forms: either the sender has made a mistake in addressing the envelope (usually due to a typographical error) or the address is out of date because the addressee has moved.  See *United States v. Palmer,* 864 F.2d 524, 527 (7th Cir.1988).

*United States v. Indelicato*, 611 F.2d 376, 384 (1st Cir.1979).

The government maintains that we should adopt the approach of the Seventh and Tenth Circuits, based largely on Judge Easterbrook's reasoning in *Palmer*. Coleman contends that we should follow the analysis of the Fifth Circuit, which distinguishes misaddressed from misdelivered mail for purposes of § 1708 liability. We believe for several reasons that the view of the Seventh and Tenth Circuits, that § 1708 covers misaddressed as well as misdelivered mail, is the better rule.

First, the language of § 1708 provides no basis for distinguishing between misdelivered and misaddressed mail. The courts that have drawn such a distinction have done so based on the view that the Postal Service's duty and authority over the mail ends once it has been delivered to the address indicated. See *Lavin*, 567 F.2d at 581 n. 6, 583; *Davis*, 461 F.2d at 89. Yet, if the unintended recipient simply writes "Return to Sender" on the envelope, the Postal Service has the duty to return the letter. See *Palmer*, 864 F.2d at 527; see also *Douglas*, 668 F.2d at 461 n. 3 ("An item does not cease to be mail within the custody of the postal system until it is delivered to the proper addressee.").

Further, we agree with *Palmer* that there is no logical distinction between misdelivered and misaddressed mail. The sender desires the letter to reach its intended recipient, and the intended recipient would presumably desire to receive a letter addressed to her. The Postal Service will attempt to deliver the letter to the intended recipient. See *Palmer*, 864 F.2d at 527. Most importantly, the unintended recipient of misaddressed mail is in the same position as the unintended recipient of misdelivered mail. Once it is clear to the unintended recipient that the letter has been misdelivered or misaddressed, he knows that he has no business opening the mail and then possessing it. The proper course of action in either event is to return the wayward mail to the Postal Service.

See *id*. It is true that the Ninth Circuit's approach to these cases attaches crucial importance to the filing of a change of address form by the intended recipient of the mail. However, we respectfully disagree with that approach because it predicates liability on something the defendant knows nothing about.

Coleman argues that it is inappropriate to place upon the unintended recipient the burden of returning a misaddressed letter to the Postal Service. As noted above, the courts of appeals agree that the unintended recipient of a misdelivered letter bears that burden. Coleman has failed to explain why the interests of the sender, the intended recipient, and the Postal Service outweigh the burden on the unintended recipient in the context of misdelivered mail, but not in the context of misaddressed mail. In either case the unintended recipient knows the letter is not for him.

■ In addition, the approach of the Seventh and Tenth Circuits is more consistent with this circuit's jurisprudence regarding the scope and purpose of the federal mail protection statutes. As we have noted before, § 1708 must be read broadly to protect the mails. See *United States v. Lopez*, 457 F.2d 396, 398 (2d Cir.1972) (concluding that § 1708 "was broadly conceived to assure the proper functioning of the postal system"); see also *United States v. Roglieri*, 700 F.2d 883, 885 (2d Cir.1983) (allowing jury to infer theft of item from the mail merely by proving that the item was mailed but never received). Coleman's argument would allow defendants to capitalize upon errors in delivery and address and keep mail that they know does not belong to them. This argument is inconsistent with this circuit's understanding of the federal mail statutes and we reject it.

Coleman's next argument is based upon a contrast between § 1708 and 18 U.S.C.

§ 1702.[2] Section 1702 criminalizes the taking of any mail "before it has been delivered to the person to whom it was directed." This phrase does not appear in § 1708. Because § 1702 clearly prohibits interference with the mail before it has reached its intended recipient, Coleman argues, the absence of parallel language in § 1708 suggests that under § 1708, a letter is no longer in the mail once it reaches the indicated address, whether or not the specified addressee receives it. There is little support for the claim that this difference in wording invalidates Coleman's conviction under § 1708. While there is dicta to the effect that § 1702 is broader in scope than § 1708, see *United States v. Ashford*, 530 F.2d 792, 795–96 (8th Cir. 1976), other circuit courts that have compared the two statutes have concluded that they differ less in scope than in purpose. See *Lavin*, 567 F.2d at 582 ("[W]hile section 1708 was concerned with theft and embezzlement for the purposes of gain, section 1702 focused on unauthorized and malicious meddling."); *Davis*, 461 F.2d at 89 (same). This difference probably accounts for § 1702's focus on the individual recipient's privacy interest in his or her mail compared to § 1708's focus on insuring that mail is properly routed to the intended recipient. These statutes may therefore overlap, particularly where, as here, Coleman opened the credit card statement, thus "obstruct[ing] the correspondence" between the card issuer and Ms. Bosch. 18 U.S.C. § 1702; see also *Palmer*, 864 F.2d at 526, 528. Even though Coleman might well have been convicted under § 1702, we see no persuasive reason why his conviction was not proper under § 1708.[3]

Finally, Coleman argues that the government's interpretation of § 1708 is too expansive:

> An item would have to be considered "in the mail" if the possessor of the mail forgot about it, threw it out, or did anything else, inadvertent or not, that would prevent the mail from getting to its intended recipient.

However, this focus on the problem of imposing criminal liability upon unintended recipients of misaddressed mail is misplaced in light of the facts of this case. Coleman was indicted, and convicted, for possessing mail that he knew was stolen. The government proved at trial that even though the credit card statement clearly belonged to Ms. Bosch, Coleman was still in possession of it and shipped it to Manhattan roughly three months later. Whether or not Coleman knew the statement was not his at the time he removed it from the mailbox, the jury could reasonably have concluded that he knew the statement was not his when he continued to possess it. Hence the interpretation of § 1708 that we adopt today does not, as Coleman suggests, impose liability upon the "inadvertent" taking of misaddressed mail, because the recipient in that case would lack the state of mind that § 1708 requires.

■ At oral argument, there was also discussion of whether a person who receives letters sent to his home address, but carrying the name of someone else (as if that person lived at that address), and who

---

2. Section 1702 provides in full:

    Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined under this title or imprisoned not more than five years, or both.

    18 U.S.C. § 1702.

3. Furthermore, if Coleman were correct that the difference in language between § 1702 and § 1708 meant that the scope of § 1708 terminated once the unintended recipient received the letter, then all of the misdelivered mail cases cited above were incorrectly decided. We reject that conclusion.

gets tired of sending those letters back to the post office and, as a result, throws the letters away can be held to have violated § 1708. That case is not before us. In any event, we reject the suggestion that an unintended recipient of misaddressed mail could be held criminally liable under any paragraph of § 1708 if the recipient acted without criminal intent sufficient to establish that he or she kept possession of the mail with a bad purpose. Criminal liability should not attach to a person merely because they know the mail was not meant for them and they kept it or disposed of it nonetheless. See, e.g., *United States v. Figueroa*, 165 F.3d 111, 115 (2d Cir.1998) (noting that in the criminal area, the presumption is that "for knowledge to suffice for criminal culpability, it should, at minimum, be extensive enough to attribute to the knower a 'guilty mind' or knowledge that he or she is performing a wrongful act.") (citation omitted). The Supreme Court has instructed that when federal statutes codify common-law crimes such as theft, it should be presumed that criminal intent is an element of the offense. See *Morissette v. United States*, 342 U.S. 246, 261–63, 276, 72 S.Ct. 240, 96 L.Ed. 288 (1952) ("That the removal of [government property] was a conscious and intentional act was admitted. But that isolated fact is not an adequate basis on which the jury should find the criminal intent to steal or knowingly convert, that is, *wrongfully* to deprive another of possession of property."). Several circuits have thus interpreted § 1708 to require proof of criminal intent. See *United States v. Iverson*, 637 F.2d 799, 800–01 n. 1 (D.C.Cir.1980) (noting that the "intent to steal [may be] formed at a later date"); *Anton*, 547 F.2d at 495 ("[O]nly after the removal does the intent arise and the theft occur."); *Walker v. United States*, 342 F.2d 22, 25 (5th Cir.1965) ("Inasmuch as theft was a crime at common law requiring intent, the law

still considers intent to be a necessary element of the crime....").[4]

For these reasons, we conclude that Coleman was properly convicted under § 1708.

### B. The district court's jury instructions

Coleman has two objections to the district court's jury instructions on the § 1708 count. First, he argues that the court erred when it instructed the jury that, "You should determine the issue of Mr. Coleman's guilt or innocen[ce] as if the mail had been taken from the intended recipient's mail box while she was living at the address where the mail box was located." Second, Coleman contends that the court erred when it instructed the jury that:

If you have decided that the letter was stolen, then an important piece of circumstantial evidence for you to consider in deciding whether Mr. Coleman knew the letter was stolen is the fact that Mr. Coleman was in possession of the stolen letter at or around the same time that and at the same place where the letter was sent.

We consider each objection in turn.

■ The statement that the jury should evaluate Coleman's conduct on the possession of stolen mail count "as if the mail had been taken from the intended recipient's mailbox," was initially dropped from the charge when Coleman objected to it. The government, which had suggested the instruction, agreed to delete this sentence, and the district judge indicated that he would remove it. However, when charging the jury, the judge inadvertently read the sentence. After the charge was given, Coleman objected. Although Coleman then requested that the judge read the relevant portion of the charge again without the sentence in dispute, he subsequently withdrew that request and asked instead that the written instructions sent in

---

4. While some of these cases also draw a distinction between misaddressed and misdelivered mail, for the reasons stated above we find no difference between these two categories of mail in terms of the unintended recipient's criminal intent.

to the jury room omit the sentence in dispute. The judge complied with that request.

■ In attacking a jury instruction in this court, a defendant bears the burden of showing that, viewing as a whole the charge actually given, he was prejudiced. See *United States v. Ouimette*, 798 F.2d 47, 49 (2d Cir.1986). The district judge offered to re-read the charge to the jury, but Coleman declined the offer, and asked instead that the written charge that went to the jury omit the sentence in dispute. Coleman now maintains that, "There is no assurance that the jury ever referred to the written instructions, let alone understood that they superseded the incorrect charge given orally." However, we review not the wisdom of Coleman's tactical decisions, but rather whether the district court erred. Coleman ultimately requested the court to take the course of action he now criticizes, so there is no basis for reversal on this point. See *United States v. Young*, 745 F.2d 733, 752 (2d Cir.1984).

■ Coleman's second objection is that the court improperly instructed the jury that it could infer Coleman's knowledge that the mail had been stolen from his possession of the mail. The government argues that Coleman did not make this specific objection at trial and that we should therefore review the allegedly deficient instruction for plain error. Relying on *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), Coleman now argues that a jury could presume knowledge that the mail was stolen only if his possession of the mail was "unexplained." Coleman concludes that because the mail was actually delivered to his own mailbox, he had a reasonable explanation for his possession of the mail. This argument misses the mark. While Coleman may have had an explanation for his receipt of the mail, the mere fact that the mail arrived in his mailbox hardly explains why he continued to possess it three months later, or why he included it among the personal effects that he shipped to

Manhattan. In light of the evidence adduced at trial, we find no error at all—much less plain error—in this instruction.

### Conclusion

We conclude that the conduct for which Coleman was convicted falls within the scope of § 1708. We also conclude that there was no reversible error in the district court's instructions on this count. Accordingly, the judgment of conviction is affirmed.